Vincent PISACANE, Individually and as a parent and next friend of Catherine Pisacane, James Carlo Pisacane, Cordelia Rose Pisacane, and Eve Isabella Pisacane, Plaintiff, Appellant,

and

Kate Pisacane, Plaintiff,

v.

Margot DESJARDINS, Individually and as she is Superintendent of Schools for the Town of Westport; Joan Tripp, Individually and as she is a member of the school committee of the Town of Westport; Town of Westport, Defendants, Appellees,

Kevin P. Feeley, An attorney for the Town of Westport; Murphy, Hesse, Toomey & Lehane, LLP., as attorneys for the Town of Westport, Defendants.

No. 02–1694.

United States Court of Appeals, First Circuit.

Oct. 18, 2004.

Thomas P. Collins with whom Robert D. Loventhal was on brief for appellant.

William P. Breen with whom Murphy, Hesse, Toomey & Lehane, LLP was on brief for appellees.

Before LYNCH, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LIPEZ, Circuit Judge.

CAMPBELL, Senior Circuit Judge.

This is an appeal from the district court's entry of summary judgment in favor of appellees, Margot Desjardins (individually and as superintendent of schools for the Town of Westport ("Town")) and Joan Tripp (individually and as member of the school committee of the Town) and against appellant, Vincent Pisacane. We dismiss the appeal for lack of jurisdiction.

## I

Pisacane died on December 16, 2002, after the notice of appeal was filed but before appellate briefs were due. Under Federal Rule of Appellate Procedure 43(a)(1), if a party dies while an appeal is pending, the deceased party's personal representative may file a motion to substitute. "If the decedent has no representative, any party may suggest the death on the record, and the court of appeals may then direct appropriate proceedings." Fed. R.App. P. 43(a)(1). While Fed. R.App. P. 43(a) does not expressly provide for the dismissal of an appeal where no motion to substitute has been filed, courts have construed the rule as conferring upon courts such a power. *See, e.g., Ortiz v. Dodge,* 126 F.3d 545, 550–51 (3d Cir.1997) ("[I]t is quite clear that, at some point, the failure to substitute a proper party for a deceased appellant moots the case."); *Crowder v. Housing Auth. of the City of Atlanta,* 908 F.2d 843, 846 n. 1 (11th Cir.1990) (construing Rule 43 as conferring "an implied power to dismiss" an appeal where no request for substitution is made); *Gamble v. Thomas,* 655 F.2d 568, 569 (5th Cir.1981) (same).

Shortly after Pisacane's death, this court was advised by Pisacane's counsel that efforts were being made to obtain a personal representative and that Pisacane's surviving second wife, Kathleen, had been designated executrix in Pisacane's will. After

granting extensions of time within which to file Pisacane's appellate brief (extensions requested on the ground that counsel could only then receive instructions as to how to proceed), this court indicated, on June 26, 2003, that any further extension would require an explanation of what steps had been taken with respect to obtaining an administrator, the reason for the delay, and when an administrator was likely to be appointed. Pisacane's counsel then filed a brief nominally on behalf of Pisacane without providing any further information as to the status of the appointment of a personal representative. This court thereupon heard the appeal, without objection from appellees, on the tacit assumption that Pisacane's counsel would have secured authority to proceed with this appeal from those legally entitled to represent the decedent.

On September 29, 2004, having heard nothing further on the subject of a personal representative and prior to issuing our opinion in this appeal, this court ordered Pisacane's counsel to move to substitute a personal representative. We cautioned counsel that failure to substitute within the time specified, seven days, would result in dismissal of the appeal. The court was under the impression that by the time of its order, such a representative would have been identified and appointed. Counsel, however, responded to our order by requesting an extension of time until December and sending us copies of papers indicating that little, if anything, had been done until receipt of the order to secure the appointment of a personal representative.

■ A court doubtless has leeway in a case such as this to allow counsel a reasonable amount of time to complete the formalities necessary to have appointed a personal representative. On the present facts, however, we can see no justification

to allow Pisacane's counsel's request for more time. First, this court was generous in past allowances of time for this purpose, and the more than a year since the filing of appellant's brief has provided considerable additional time. Yet little or nothing has been done. Second, for reasons set forth in the balance of this opinion, *infra*, Pisacane's appeal is without merit. No practical purpose would be served by encouraging and awaiting the late appointment of a personal representative in order to dispel mootness *nunc pro tunc*, only to issue our opinion dismissing the appeal on the merits. No person interested in Pisacane's estate will be prejudiced by dismissal of the appeal now.

Accordingly, we have separately denied counsel's motion for more time to seek the appointment of a personal representative and to substitute same herein. Without such substitution, the appeal lacks an essential party and is moot. Accordingly, we dismiss it for lack of jurisdiction.

## II

In this section we review the merits of the appeal but solely for the limited purpose of demonstrating that dismissal at this time, without affording further opportunity to appoint a personal representative, cannot prejudice any of decedent Pisacane's successors in interest.

Pisacane, individually and as a parent and next friend of his children, Catherine, James, Cordelia, and Eve, filed a complaint in the district court alleging, *inter alia*, that appellees had violated 42 U.S.C. § 1983 by denying Pisacane his rights to substantive due process under the Fifth and Fourteenth Amendments and to free speech under the First Amendment.[1] The district court awarded summary judgment in favor of appellees.[2]

We review de novo the entry of summary judgment, considering the facts in the light most favorable to the party opposing summary judgment. *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 185 (1st Cir.1998). Pisacane based his substantive due process claims primarily on the following alleged incidents: (1) in retaliation for Pisacane's complaints concerning a science textbook, his daughter, Catherine, was denied entry into a journalism class being taught at her school; (2) after Kate threatened to file a formal complaint, Desjardins, as superintendent of schools for the Town, stated that she could not guarantee Catherine's safety if such a complaint was filed; (3) after filing a request for school records relative to his children, Pisacane was told that the response to the request could be picked up at Desjardins' office, and, shortly after he and Kate arrived at the office, a police officer escorted them out of the building based on Desjardins' misrepresentation that they had been disruptive; (4) Pisacane and Kate went to Desjardins' office to get school records and were informed by Desjardins that they had been banned from the building; and (5) at a school committee hearing, Pisacane's wife,

---

1. Pisacane filed the complaint jointly with his wife, Kate, whose claims were later dismissed after settlement, and his minor children, whose claims were also dismissed. Accordingly, Pisacane was the only remaining plaintiff when summary judgment was granted, and we therefore consider only his claims.

2. Pisacane also raised state law claims. The district court, after granting summary judgment in favor of appellees on all federal law claims, declined to retain jurisdiction over Pisacane's state law claims and dismissed them without prejudice. Pisacane does not dispute that if we affirm the entry of summary judgment on the federal law claims, then we should affirm the dismissal of his state law claims. *See* 28 U.S.C. § 1367(c). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Kate, was recognized by Tripp to speak, but, soon after Kate began to speak, Tripp, based on the content of Kate's speech, ruled that Kate was out of order and had a police officer remove her from the meeting.

We turn first to Pisacane's substantive due process claim. As Pisacane does not contend the appellees' conduct "shocks the conscience," he must demonstrate, in respect to himself, "a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment." *Brown v. Hot, Sexy, & Safer Prod., Inc.*, 68 F.3d 525, 531 (1st Cir.1995) (citations omitted). Like the district court, we find no such deprivation.

■ Pisacane argues that the appellees' conduct violated his identified liberty interest "to direct the upbringing and education of children under [his] control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). "Numerous cases, however, have made it clear that this constitutional right is limited in scope." *Swanson v. Guthrie Indep. Sch. Dist. No. 1–L*, 135 F.3d 694, 699 (10th Cir.1998). In *Brown*, we ruled that this right embraces the principle that the state cannot prevent parents from choosing for their child a specific educational program but did not include the right to dictate the curriculum at the public school to which parents have chosen to send their children. 68 F.3d at 533–34.

Here, the asserted facts do not show that appellees interfered with Pisacane's choice to enroll his children at a particular institution or in educational programs oth-

erwise open to them. The Town, indeed, allowed Pisacane to remove Catherine from the Town's public schools for home teaching upon certain conditions. We add that nothing in the Town's conduct and its conditions relative to homeschooling, insofar as now open to review on appeal, raises issues of constitutional dimension.[3] *See Care & Protection of Charles*, 399 Mass. 324, 504 N.E.2d 592, 600–02 (1987) (interpreting state and federal constitutional law and holding that school committee may properly consider length of home school year, require certain hours of instruction, may examine competency of parents to teach children, may have access to textbooks, lesson plans, and instructional aids, and may require periodic standardized testing).

The appellees' asserted refusal to let Pisacane dictate to the school about the science textbook, and their alleged retaliatory denial to Catherine of a position in a journalism class, would not violate the parental due process right. As said, the right does not include parental control over a public school's curriculum and class assignments. *Brown*, 68 F.3d at 533–34. As to Desjardins' purported statement that she could not guarantee Catherine's safety if a complaint were filed over denial of entry to the journalism class, and assuming dubitante any constitutional claim is asserted, it is undisputed that Pisacane did, in fact, file such a complaint that same day; hence he was undeterred by any threat made. Desjardins' alleged statement cannot, therefore, be said to have interfered materially with Pisacane's parental rights.

---

3. During the summary judgment hearing, Pisacane contended that Desjardins imposed unreasonable restrictions on his and his wife's attempt to homeschool, such as requiring standardized testing and "failing to effectively monitor the progress of the children's education." These arguments were not, how-

ever, raised in his appellate brief and are therefore waived. *Pratt v. United States*, 129 F.3d 54, 62 (1st Cir.1997) ("It is firmly settled in this circuit that arguments not advanced and developed in an appellant's brief are deemed waived.").

As to the cited incidents allegedly denying Pisacane access to the records of his children, Pisacane points to no precedent holding that disputes over the timing and manner of release of children's school records give rise to invocation of a federal constitutional right of parents to control their children's education. Even supposing, without deciding, that a public school's unconditional refusal to show a student's records to parents might, in appropriate circumstances, pose an issue under the federal constitution, the school did not engage in such an unconditional refusal here. Kate was, on one occasion at least, given access to the requested records, and records were sent to the Pisacane home shortly after the Pisacanes were allegedly banned from the building.

Under a similar rationale, Tripp's refusal to allow Pisacane's wife to speak publicly at the school committee hearing did not reach the level of a violation of Pisacane's substantive due process right, as a parent, to direct his children's education. Pisacane's brief contends that Tripp suppressed Kate's speech because it concerned the prevention of the Pisacanes from obtaining school records. So viewed, the incident was yet another piece of Pisacane's claim that he and his wife were unconstitutionally thwarted in regard to the obtaining of their children's records. Whether refusal to let Kate speak also violated his, as well as Kate's, free speech rights under the First Amendment is a separate issue, see below, but we see no viable federal substantive due process claim available to Pisacane based upon these facts.

We turn next to Pisacane's claim that the suppression of his wife Kate's speech at the school committee hearing deprived him of his freedom of expression guaranteed by the First Amendment. The short answer to this contention is that Pisacane lacks standing to assert a First Amendment claim resting upon the alleged denial of his wife's free speech rights. " 'There are good and sufficient reasons for th[e] prudential limitation on standing when rights of third parties are implicated—the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.' " *Elk Grove Unified Sch. Dist. v. Newdow,* —— U.S. ——, —— n. 7, 124 S.Ct. 2301, 2311 n. 7, 159 L.Ed.2d 98 (2004) (quoting *Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 80, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)). Pisacane did not attend the meeting and he does not rest his claim on the contention that Kate was acting as his agent. Kate, in fact, has settled all her own claims, including presumably her First Amendment claim, with appellees.

III

Given the absence of any personal representative of the decedent, we dismiss this appeal for lack of jurisdiction. This dismissal is not prejudicial to those potentially interested in Pisacane's estate because, if we were to reach the merits, we would affirm the district court's entry of summary judgment in favor of appellees on Pisacane's federal law claims and affirm the district court's dismissal without prejudice of Pisacane's state law claims. *See* 28 U.S.C. § 1367(c).

***So Ordered.***