# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

Argued April 20, 2015        Decided September 18, 2015

No. 14-5119

ELOUISE PEPION COBELL, ET AL.,
APPELLANTS

v.

SALLY JEWELL, SECRETARY OF THE INTERIOR, ET AL.,
APPELLEES

—————

Appeal from the United States District Court
for the District of Columbia
(No. 1:96-cv-01285)

—————

*David C. Smith* argued the cause for appellants. With him on the briefs were *William E. Dorris*, *Adam H. Charnes*, and *Elizabeth L. Winters*.

*Stephen J. Vaughan* was on the brief for *amicus curiae* Indian Land Tenure Foundation in support of appellants.

*Alisa B. Klein*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney at the time the brief was filed, and *Beth S. Brinkmann*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: HENDERSON and MILLETT, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  This is the eleventh appeal to this court in nearly two decades of litigation arising out of the Department of the Interior's misadministration of Native American trust accounts and an ensuing complex, nationwide litigation and settlement.  As the case winds down, the class action representatives have appealed the district court's denial of compensation for expenses incurred during the litigation and settlement process.

We affirm the district court's denial of additional compensation for expenses for the lead plaintiff, Elouise Cobell, because the district court expressly wrapped those costs into an incentive award given to her earlier.  We conclude, however, that the district court erred in categorically rejecting as procedurally barred the class representatives' claim for the recovery of third-party payments, and remand for the district court to apply its accumulated expertise and discretion to the question of whether third-party compensation can and should be paid under the Settlement Agreement.

**I**

**Background**

This long-running litigation saga has been documented in numerous decisions of this court over the course of multiple appeals.  *See Cobell v. Kempthorne*, 455 F.3d 317, 330–331 (D.C. Cir. 2006) (cataloging this court's decisions in eight appeals); *Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009); *Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012).

In brief, five named plaintiffs ("Class Representatives") initiated a class action lawsuit in 1996 seeking to compel the United States Department of the Interior to perform a historical accounting of the hundreds of millions of dollars held by the Department in trust for Native Americans. That accounting was required by the American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, 108 Stat. 4239. In 2001, we affirmed the district court's conclusion that the Department had unreasonably and unlawfully delayed that statutorily mandated accounting. *Cobell v. Norton*, 240 F.3d 1081, 1105 (D.C. Cir. 2001). For the next decade, the parties, the district court, and Congress all struggled to determine how the Department could feasibly discharge its legal duty to conduct an accounting of the hundreds of thousands of "Individual Indian Money" trust accounts under its control. That would have been a herculean task under the best conditions, but the difficulty of the Department's charge was compounded by its unreliable records of the identity and location of the original account holders, more than a century of deficient bookkeeping by the Department, and decades of "fractionation" as allotment interests passed from one generation to the next. *See Cobell v. Kempthorne*, 569 F. Supp. 2d 223, 226–227 (D.D.C. 2008) (chronicling the accounting problems associated with maintaining a "121-year old perpetual trust, managed by civil servants, with rapidly multiplying beneficiaries and a variety of ever-changing assets"), *vacated and remanded by Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009).[1]

---

[1] "Fractionation" occurs when "Indian allotments are divided and divided again by inheritance through succeeding generations." *Cobell v. Kempthorne*, 532 F. Supp. 2d 37, 41 (D.D.C. 2008), *vacated and remanded by Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009).

We pick up the story in 2010 with the enactment of the Claims Resolution Act ("Claims Act"), Pub. L. No. 111-291, 124 Stat. 3064 (2010). The Claims Act authorized, ratified, and confirmed the parties' comprehensive Settlement Agreement resolving the class action litigation. *See id.* § 101(c)(1). The Claims Act also referenced a separate agreement on attorneys' fees, costs, and expenses that the parties had negotiated ("Fee Agreement"). *Id.* § 101(a).

Under the Settlement Agreement, each member of what was known as the "Historical Accounting Class" received $1,000 in lieu of an actual accounting. The money would come from the Accounting/Trust Administration Fund, which was to be created by the government's payment of $1.412 billion into a settlement account. *See Cobell v. Salazar*, 679 F.3d 909, 914 (D.C. Cir. 2012).[2] A separate class, known as the "Trust Administration Class," received a baseline payment of $500 and a prorated share of any funds left over in the settlement account after specified payments were made, including attorneys' fees and awards to the Class Representatives. *Id.* at 914–915. In exchange, all class members released the Department of Interior from liability arising out of prior mismanagement of their trust accounts.

---

[2] The "Historical Accounting Class" consisted of individual Indian beneficiaries who had an Individual Indian Money account (with at least one cash transaction) between October 25, 1994 (the enactment date of the American Indian Trust Fund Management Reform Act) and September 30, 2009 (the "Record Date" of the parties' Settlement Agreement). This class did not include account holders who had filed an individual claim for a historical accounting prior to the filing of the parties' original complaint. Settlement Agreement ¶ A.16.

*Id.*[3]  Plaintiffs inform us that, to date, "91% of all settlement funds have been distributed."  Cobell Supp. Br. 4.

The Settlement Agreement separately provided for the recovery of "attorneys' fees, expenses, and costs" "for Class Counsel."  Settlement Agreement ¶ J(1).  The Agreement required the Class Representatives to file a notice with the district court, prior to the preliminary hearing on approval of the Settlement Agreement, that would disclose the up-to-date amount of attorneys' fees, expenses, and costs requested.  *Id.* ¶ J(2).  Post-settlement amounts were governed by a separate procedure.  *Id.* ¶ J(4).  The Settlement Agreement further provided that the amount ultimately to be awarded would be "within the discretion of the [District] Court in accordance with controlling law[.]"  *Id*. ¶ J(5).

The Fee Agreement mirrored that structure, separating pre- and post-settlement requests for attorneys' fees, expenses, and costs.  Fee Agreement ¶¶ 4–5.  In the Fee Agreement, the plaintiffs agreed not to seek more than $99.9 million above amounts previously paid by the government, and the government agreed that it would not argue for less than $50 million above those amounts.  *Id.* at ¶ 4(a)–(b).

The Claims Act also authorized the district court to grant "incentive awards" to the Class Representatives.  Claims Act

---

[3] The "Trust Administration Class" included individual Indian beneficiaries who had Individual Indian Money accounts between 1985 and the date of the proposed amended complaint, as well as individuals who, as of the Record Date, "had a recorded or other demonstrable ownership interest in land[.]"  Settlement Agreement ¶ A.35.  This class excluded those who, prior to the filing of the amended complaint, had filed actions on their own for claims that otherwise would have fallen under the claim release entered into by the Trust Administration Class.  *Id.*

§ 101(g)(1).  The Settlement Agreement that was ratified and confirmed by the Claims Act, *see id*. §§ 101(a)(8), (c)(1), elaborated that the "petition for incentive awards" shall "includ[e] expenses and costs[] of the Class Representatives." Settlement Agreement ¶ K.2.  The Settlement Agreement recorded the plaintiffs' estimate that the total amount of the expenses and costs requested would be "in the range of $15 million above those paid by Defendants to date."  *Id.* ¶ K.1.

In January 2011, the plaintiffs filed both a Petition for Class Counsel's Fees, Expenses and Costs Through Settlement, and a Petition for Class Representatives' Incentive Awards and Expenses.  In the Attorneys' Fees Petition, the plaintiffs requested $99.9 million in attorneys' fees "in accordance with the literal provisions" of the Fee Agreement, but argued "that a fee award of $223 million, plus expenses and costs of $1,276,598, is in accordance with controlling law and within this Court's discretion."  J.A. 748.  The government argued that the total award should be limited to $50 million.

In the Incentive Awards Petition, the Class Representatives requested a total of $2.5 million in incentive awards for themselves, and an additional $10.5 million in "reimbursement" for expenses and costs incurred in prosecuting the litigation.  The government contended that the Class Representatives should not receive more than a total award of $1 million to cover both personal expenses and incentives.  The government also argued that the additional $10.5 million should be denied because it was for the expenses of third parties, not those of the Class Representatives.

The district court held a fairness hearing on June 20, 2011.  At the close of the hearing, the court granted four of

the Class Representatives a total of $2.5 million in incentive awards.[4] But the court denied their separate request for reimbursement of expenses and costs. With respect to the $390,000 that Ms. Cobell said she had spent out of her personal funds, the district court ruled that amount should be reimbursed "out of her sizeable" $2 million "incentive award." J.A. 1761. The court then denied the additional $10.5 million in requested expenses on the ground that the expenses were not incurred by the Class Representatives, and the court otherwise lacked authority to award expenses paid by third parties. The court also awarded $99 million in "attorneys' fees, expenses and costs." J.A. 1763.

The plaintiffs filed a motion for reconsideration relating to the denial of expenses on June 27, 2011, one week after the court's oral ruling at the fairness hearing, but before the district court entered a written order reflecting its rulings.

On July 27, 2011, the district court entered a written order granting final approval to the settlement and setting forth the rulings made during the fairness hearing. That order reflected the grant of incentive awards to the four Class Representatives, and the denial of an additional $10.5 million in expenses "because plaintiffs have not shown that these are expenses or liabilities of the Class Representatives." J.A. 1790. The written order made clear that the plaintiffs' pending motion for reconsideration would "be the subject of a further order," and otherwise made no reference to its authority to reimburse third-party expenses incurred by Class

---

[4] The court denied any incentive award for the fifth Class Representative, Earl Old Person, because he had been removed in 2003 for failing to satisfy his duties as a class representative. J.A. 1761.

Representatives or Class Counsel. J.A. 1790 n.2. The district court entered final judgment on August 4, 2011.

Two years later, the plaintiffs filed a "Notice of Supplemental Information and Correction" amending their still-undecided motion for reconsideration of the denial of expenses. The Notice included exhibits and "correct[ed]" the amount sought by adding a nearly $500,000 loan from the Indian Land Tenure Foundation to the Blackfeet Reservation Development Fund. J.A. 1796.

On October 16, 2011, the lead plaintiff, Elouise Cobell, died. Counsel did not substitute her estate or anyone else in her place prior to the district court's decision or the filing of a notice of appeal.

Almost three years after the motion for reconsideration was originally filed, the district court denied reconsideration. *Cobell v. Jewell*, 29 F. Supp. 3d 18, 19 (D.D.C. 2014). Viewing the plaintiffs' motion as a Rule 59(e) post-decisional motion, the district court first held that the argument that the Class Representatives were personally liable for some of the $10.5 million in requested expenses was procedurally barred because they could—and should—have raised that new argument before the court ruled on the Class Representatives' petition. *See id.* at 23. The court further ruled that, even if the claim were properly before it, the plaintiffs had failed to show that the Class Representatives were in fact personally liable for the claimed expenses. *See id.* at 23–25. Instead, the district court concluded that those expenses, if recoverable at all, were payable out of the $99 million award for Class Counsels' fees, expenses, and costs. *Id.* at 24–25. Finally, the district court declined to consider as untimely raised an argument that the Settlement Agreement provided for payment of third party costs and expenses "wholly

independent of, and in addition to, expenses and costs of Class Counsel." *Id.* at 25.

The plaintiffs filed a notice of appeal from both the original July 27, 2011, written order and the denial of reconsideration.

## II

## Jurisdictional Analysis

Before we can proceed to the merits of the appeal, we must be confident of our authority to decide the case at all, whether or not jurisdictional challenges are pressed by a party. *See, e.g.*, *City of New York v. National R.R. Passenger Corp.*, 776 F.3d 11, 14 (D.C. Cir. 2015).

### *Timeliness of Appeal*

The government's opening brief hinted that the appeal is jurisdictionally barred as untimely, while its post-argument supplemental brief offered a more full-throated timeliness objection. The argument turns on the differing operations of Federal Rules of Civil Procedure 54(b) and 59(e). In brief, when cases involve multiple parties or multiple claims, Rule 54(b) allows a litigant to move for reconsideration or modification of a district court's interlocutory order disposing of "fewer than all the claims or the rights and liabilities of fewer than all the parties" "at any time" before the court's entry of final judgment. Because Rule 54(b) operates while a case is still ongoing in district court and before any appealable final judgment has been entered, such motions for reconsideration, of course, do not toll the time for taking an appeal because the clock has not even started ticking. *See, e.g.*, *Goodman v. Johnson*, 471 F. App'x 114, 2012 WL 1111106, at \*1 (4th Cir. April 4, 2012) (A "motion seeking

reconsideration, filed under Fed. R. Civ. P. 54(b), [does] not qualify to toll the thirty-day time limit."); *Schaeffer v. First Nat'l Bank of Lincolnwood*, 465 F.2d 234, 236 (7th Cir. 1972) (Fed R. App. P. 4(a) "provides that certain motions, not including motions for a Rule 54(b) order, toll the running of [the period in which to notice an appeal] during their pendency.").

Rule 59(e), in contrast, is a motion for reconsideration that is filed only *after* the district court's entry of a final judgment. Because the entry of a final judgment starts the time running on the filing of an appeal, a Rule 59(e) motion stops the appeal clock until after the motion is decided. *See* Fed. R. App. P. 4(a)(4)(A); *Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n*, 781 F.2d 935, 940 (D.C. Cir. 1986).[5]

The Class Representatives' notice of appeal was unquestionably timely to appeal the March 20, 2014, order denying reconsideration of the claims for expenses. The question is whether they could also appeal the July 2011 order and August 2011 judgment that first denied the expense awards.

The government's initial brief suggested that, given the passage of time, the plaintiffs could only appeal the July 2011 order if their motion for reconsideration were brought under

---

[5] Adding to the layers, Federal Rule of Civil Procedure 58(e) permits a district court to treat a timely motion for attorneys' fees as a Rule 59 motion tolling the time to file an appeal. *See* Fed. R. Civ. P. 58(e). A district court must affirmatively order such treatment before the time that a notice of appeal becomes effective, however, and no such order was issued here. *See id.*

Federal Rule of Civil Procedure 59(e), rather than Rule 54(b), because only the former would have tolled the time for appeal. The government's supplemental brief goes further and argues that, because the August 2011 entry of final judgment approving the Settlement Agreement was treated as a final judgment by the parties and this court on appeal, *see Cobell v. Salazar*, 679 F.3d 909, 916 (D.C. Cir. 2012), the plaintiffs can no longer bring an appeal from the district court's incentive award determination at all, notwithstanding the pendency of their motion for reconsideration at the time that judgment was entered.

Neither timeliness objection succeeds. An award of costs and expenses at the end of litigation, like an award of attorneys' fees, is not reviewable on appeal until final in district court. And as a general matter, "an order finding liability for attorney's fees" or litigation expenses "is not final until the amount has been determined." *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 677 (D.C. Cir. 1996); *see also Father Flanagan's Boys Home v. District of Columbia Government*, No. 02-7157, 2003 WL 1907987, at *1 (D.C. Cir. April 17, 2003) (unpublished) (*sua sponte* dismissing appeal from order imposing costs and fees "[b]ecause the district court ha[d] not yet issued an order determining the amount to be awarded"); *Shields v. Washington Bancorporation*, 25 F.3d 1115, 1994 WL 266525, at *1 (D.C. Cir. June 2, 1994) (unpublished) (same for attorneys' "fees and expenses").

That finality was plainly lacking here in July and August 2011 because the district court's written order expressly stated that the then-pending motion for reconsideration of the denial of "Class Representatives' Expense Application * * * will be the subject of a further order." J.A. 1790. That is about as non-final as an initial ruling can get. And the formal entry of

judgment on August 4, 2011 said nothing about the reconsideration motion, leaving it pending and unresolved.

The parties' appeal of the final judgment approving the Settlement Agreement could not by itself infuse a still-pending issue with finality. The Supreme Court has enforced a "bright-line rule * * * that a decision on the merits is a 'final decision' for purposes of [28 U.S.C.] § 1291 whether or not there remains for adjudication a request for attorney's fees [or expenses] attributable to the case." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–203 (1988); *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268–269 (1988) ("[A] request for costs raises issues wholly collateral to the judgment in the main cause of action[.]"); *see also Shultz v. Crowley*, 802 F.2d 498, 505 (D.C. Cir. 1986). That rule holds whether the fees and expenses sought are authorized by contract or by statute. *Ray Haluch Gravel Co. v. Central Pension Fund of the Int'l Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773, 780 (2014); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1144–1145 (9th Cir. 2000) (order approving class settlement was final notwithstanding still pending request for attorneys' fees and costs). It was thus entirely appropriate for the appeal of the settlement approval to proceed while the award of costs and expenses awaited final resolution.[6]

---

[6] To the extent that plaintiffs' counsel's arguments during the appeal of the judgment approving the Settlement Agreement suggested that the expense award was final (an issue on which we do not opine), attorney arguments cannot create a finality that the district court has withheld. The government, of course, is free to make any judicial estoppel arguments it considers relevant in district court. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying

*Ripeness*

At oral argument, plaintiffs' counsel acknowledged that all class members that can be located must be compensated before an expense award could be paid out, suggesting the possibility that there might not ultimately be sufficient funds to pay the expense award even if plaintiffs prevailed on appeal. *See* Oral Arg. Tr. 15:2–16:17. That raised the question of whether the appeal was ripe for disposition since the court would have been deciding the legal basis for a payment that, on counsel's telling, might never happen.

That would be a jurisdictional problem. "Put simply, 'Article III courts should not make decisions unless they have to.'" *VanderKam v. VanderKam*, 776 F.3d 883, 888 (D.C. Cir. 2015) (quoting *National Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)). Ensuring that issues presented are ripe for decision protects against the "premature adjudication of 'abstract disagreements'" and "reserves judicial power for resolution of concrete and 'fully crystalized' disputes." *VanderKam*, 776 F.3d at 888. In deciding whether a case is ripe, we consider "(1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

The "fitness" prong "look[s] to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *National Ass'n of Home Builders v. United States Army Corps of Engineers*, 440 F.3d 459, 463–

on a contradictory argument to prevail in another phase.'") (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

464 (D.C. Cir. 2006) (quoting *Village of Bensenville v. FAA*, 376 F.3d 1114, 1120 (D.C. Cir. 2004)). That test is satisfied here. The issue of whether the Settlement and Fee Agreements permit the reimbursement of third-party costs is a question of contract interpretation and, to the extent incorporated into the Claims Act, statutory construction. Those are both legal questions that we review *de novo*. *Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007) (contract interpretation); *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (statutory interpretation). In addition, the district court has conclusively denied the requested expense award, and there is nothing in the ongoing fund-distribution proceedings in district court that would affect the plaintiffs' entitlement to the requested compensation or would otherwise provide a more concrete setting for deciding the issue.

As to the hardship prong, the plaintiffs' supplemental briefing advised that $55 million has already been set aside for expenses separate and apart from the still-undistributed funds, Cobell Supp. Br. 9 n.8, so the availability of funds to pay an expense award, were plaintiffs to prevail, no longer is an issue, *see also* Gov't Supp. Br. 6 (acknowledging that "there should be funds available to make such an award"). That means that, in resolving this appeal, we would not be "spending our scarce resources on what amounts to shadow boxing." *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 967 (D.C. Cir. 2011). Moreover, if successful, the plaintiffs would be able to seek an "immediate, concrete, and valuable benefit." *Vanderkam*, 776 F.3d at 889. In contrast, delaying the claim indefinitely until every last plaintiff is paid from an entirely separate pool of funds, especially after nearly two decades of litigation already, would constitute a material hardship. For those reasons, the plaintiffs' challenge is ripe for appellate review.

15

*Finality*

Even though the appeal was timely filed and the issues raised are ripe, our jurisdiction is generally limited to reviewing final judgments. *See*, *e.g.*, *Blue v. District of Columbia Public Schools*, 764 F.3d 11, 15 (D.C. Cir. 2014). While the district court's 2014 denial of reconsideration of the decision not to award expenses conclusively resolved that issue, the fight over attorneys' fees and expenses has not entirely wrapped up. Still pending before the district court are (i) the claim of an attorney, Mark Kester Brown, to share in the fee award already made to class counsel, and (ii) a request from class counsel for post-settlement attorneys' fees and expenses. We conclude that neither of those issues deprives the expense-award judgment of finality.

The issue of Attorney Brown's individual entitlement to recover attorneys' fees based on the scope of his involvement in the case is entirely independent of and has no bearing on the decision whether to make an expense award to the plaintiffs under a distinct provision of the Settlement Agreement. *See Samuels v. District of Columbia*, 70 F.3d 638, 1995 WL 650158, at *1 (D.C. Cir. 1995) (unpublished) ("A post-judgment order is generally not appealable as long as any '*closely related* questions or proceedings remain pending.'") (emphasis added) (quoting 15B Wright & Miller, Federal Practice & Procedure § 3916, at 356 (2d ed. 1992)).

Equally importantly, Brown's claim does not seek to alter the total amount awarded in attorney's fees—he simply wants a part of the existing pie. Resolution of his claim thus will not affect the finality of the overall decision to award specific amounts to the attorneys and Class Representatives. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 n.7 (1980) (company could appeal order requiring it to pay specified sum

to class even when order left undetermined what portion would be paid to attorneys, as the company "had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class").

As to the still pending request for *post*-settlement fees and expenses, that too is a separate and distinct legal matter. The Settlement Agreement and Fee Agreement both break pre- and post-settlement fees and costs out as two independent matters. Settlement Agreement ¶¶ J(1), J(4); Fee Agreement ¶¶ 4, 5. And sensibly so. The pre-settlement fees and costs pertain to a finite time and set of proceedings, all of which have long-since concluded. Moreover, the order under review conclusively resolves the last outstanding issue regarding the amount of and entitlement to those pre-settlement fees and expenses.

The post-settlement fees and costs, by contrast, could continue indefinitely, for as long as the distribution of funds and administration of the settlement continues. That process has already taken years, with no end clearly in sight. Importantly, there is no suggestion here that the fee and expense awards made for pre-settlement work would be revisited in resolving post-settlement fees. Furthermore, the fact that we have already upheld the district court's approval of the Settlement Agreement, *Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012), means that the prospect of the entire judgment being reopened is (at best) speculative, and indeed is something for which no party is asking. That is sufficient to render the pre-settlement expense decision final.[7]

---

[7] *See, e.g.*, *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 702–703 (3d Cir. 2005) ("[I]n a complex and ongoing action such as this, § 1291 should not act as a bar to our exercise of

## III

### Analysis of Expense Award Decision

The Claims Resolution Act gave the district court discretion to determine whether to award the Class Representatives incentive payments and the amount of any such payments "in accordance with controlling law[.]" Pub. L. No. 111-291, § 101(g)(1)(A); *see also Cobell*, 679 F.3d at 922 ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments; it left that decision and the amount of any such payments to the discretion of the district court."). We accordingly review the district court's denial of compensation for expenses for an abuse of discretion. We similarly review the district court's denial of reconsideration, whether brought under Rule 54(b) or Rule 59(e) of the Federal Rules of Civil Procedure, for abuse of discretion. *See Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011) (Rule 54(b)); *Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007) (Rule 59(e)).

---

jurisdiction over a fee award which resolves all fee claims for the period leading up to a verdict."); *Gates v. Rowland*, 39 F.3d 1439, 1450 (9th Cir. 1994) (entry of judgment as part of an ongoing and periodic fee award process arising from monitoring a consent decree was final because the decision conclusively resolved the amount of fees that would be awarded for a discrete period of time and activity under the consent decree); *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 610 (1st Cir. 1992) (order regarding fees for one phase of litigation was final because the award for that phase was "[i]n effect * * * inviolate" in the next fee phase); *cf. Pigford v. Veneman*, 369 F.3d 545, 547 (D.C. Cir. 2004) (no appellate review where the order challenged "does not finally dispose of a fee petition even for a finite part of the post-judgment period").

The plaintiffs' motion for reconsideration argued both that (i) the Class Representatives were personally liable for much of the expenses they sought to recover, and (ii) even if the expenses were not attributable to the Class Representatives, the Settlement Agreement permits the payment of costs and expenses of third parties wholly independent of the costs and expenses of Class Counsel. J.A. 1838, 1841. On appeal, the only argument that plaintiffs press concerning individual responsibility for expenses is lead plaintiff Elouise Cobell's asserted personal liability for $390,000 in expenses. Otherwise, the plaintiffs devote most of their appellate effort to challenging the district court's ruling that it lacked authority to make any award for expenses incurred by third parties.

### *Cobell's Personally Incurred Expenses*

Elouise Cobell died on October 16, 2011, more than two years before the district court denied her motion to reconsider her individual claim for compensation of litigation expenses and before a notice of appeal was filed on her behalf. While the death of a party generally moots any claim for injunctive relief, death usually does not moot a claim for monetary compensation. *See, e.g.*, *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 630 (1984); *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48–49 (1st Cir. 2006); *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 248–249 (3d Cir. 2002); *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1207 n.5 (10th Cir. 2002). But that is because the individual's estate or someone else legally eligible to recover the monetary claim on the deceased's behalf is substituted by counsel, as federal rules specifically provide. *See* Fed. R. App. P. 43(a); Fed. R. Civ. P. 25(a)(1); *Goodwin*, 436 F.3d at 47, 49 (claim for damages "survive[d] [plaintiff's] death and Article III's 'case or controversy' element" where "personal representative * * *

successfully moved for substitution as party plaintiff"); *Harrow*, 279 F.3d at 247, 250 (same).

Inexplicably, counsel in this case never made any such substitution either in the district court or at any time this appeal was pending, until this court entered an order to show cause why Cobell's claim should not be dismissed as moot. Counsel simply continued to press Cobell's personal and individualized claim for compensation for expenses she paid to third parties as though her asserted injury could still be redressed.

That incomprehensible delay in substitution could have been fatal. Article III of the Constitution confines our jurisdiction to deciding actual cases or controversies. *See Genesis Healthcare Corp. v. Symczk*, 133 S. Ct. 1523, 1528 (2013). And one foundational and indispensable element of a case or controversy is that a plaintiff have a "personal stake in the outcome" at all stages of the litigation. *Id.* Until our order to show cause, that prerequisite was conspicuously lacking here for Cobell's individual claim for compensation.

Cobell's counsel responds only that the federal rules setting up the procedure for substitutions in the event of a party's death do not impose a strict time limit for filing such a motion. Pls.' Show-Cause Resp. 4–6; *see generally* Fed. R. Civ. P. 25(a)(1); Fed. R. App. P. 43(a). At most, that suggests that counsel's inexplicable delay did not violate the letter of the Rules, although an expectation of ordinary diligence presumably underlies each rule, and that certainly was transgressed here.

The Rules, however, are no answer to the problem of Article III mootness, which can be triggered by inordinate delay in filing a motion for substitution. *See Ortiz v. Dodge*, 126 F.3d 545, 550–551 (3d Cir. 1997) ("Regardless of

whether [an] attorney has failed to comply with Rule 43(a), we think it is quite clear that, at some point, the failure to substitute a proper party for a deceased appellant moots the case."); *Pisacane v. Desjardins*, 115 F. App'x 446, 449 (1st Cir. 2004) (dismissing appeal as moot where plaintiff's counsel failed to timely substitute under Rule 43); *Coster v. Watts*, 390 F. App'x 168, 171 (3d Cir. 2010) (same, where counsel had "numerous opportunities to find a substitute" but failed to do so). Counsel in this case and in other cases going forward would thus be well-advised to act diligently and promptly in providing courts formal notice of the death of a party—especially when the party is a class representative—and making the legally required substitution.[8]

Turning to the merits of Cobell's claim, the plaintiffs' argument that the district court failed to properly consider or compensate any expenses personally incurred by Cobell is a complete non-starter. The district court awarded Cobell a $2 million incentive payment—80% of the total amount of incentive payments granted. When the question of expenses was raised, the district court was explicit: The $2 million "will incorporate her expenses as well," and so those personally incurred costs "will come out of her sizable incentive award that I have already approved." J.A. 1760, 1761. "She will not get additional monies for her expenses." J.A. 1760. The court repeated that determination in the decision denying reconsideration. J.A. 1841.

Compensating Cobell in that manner was entirely appropriate. The Settlement Agreement specifically provides

---

[8] In a separate order, we grant the tardy motion for substitution solely for purposes of litigating Cobell's individual claim for monetary compensation. We leave for the district court to consider on remand whether any substitution for Cobell in her capacity as a class representative is appropriate or necessary.

that the request for "incentive awards" shall "includ[e] expenses and costs, of the Class Representatives." Settlement Agreement ¶ K.2. The district court's approach also comported with practice, as incentive awards have often been used to compensate a class representative for incurring expenses or taking on financial risk. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 CIV. 5587 (PKL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (incentive award took into account that class representative had advanced most of the expenses incurred in the litigation).[9]

### *Authority to Compensate for Third Party Expenses*

The district court declined to address the plaintiffs' argument that the Settlement and Fee Agreements authorized an award of expenses even if they were incurred by third parties. Treating the motion for reconsideration as filed under Rule 59(e), the court reasoned that the argument was a new one that "could have been raised before the Court ruled on the incentive-award petition and, therefore, is not a proper subject of the motion for reconsideration" under Rule 59(e). 29 F. Supp. 3d at 25; *id*. at 22–23 ("The Court * * * will treat the plaintiffs' motion for reconsideration as a timely motion to alter or amend the judgment pursuant to Rule 59(e)," and a "Rule 59(e) motion * * * may not be used to raise arguments or present evidence that could have been raised before the entry of judgment.") (citing *GSS Grp. Ltd. v. National Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012)).

---

[9] *See also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (potential liability for defendants' costs); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (potential liability for counsel's expenses); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1221 (S.D. Fla. 2006) (covering potential liability for "financially ruinous" costs).

Denying consideration of the plaintiffs' argument as procedurally barred under Rule 59(e) was error. A motion under Rule 59(e) is a motion "to alter or amend a judgment," Fed. R. Civ. P. 59(e), yet at the time the motion for reconsideration was filed, no judgment had yet been entered, nor had the district court's oral ruling even been reduced to writing. The decision was interlocutory and thus the reconsideration motion should have been treated as filed under Rule 54(b).

That mistaken characterization of the reconsideration motion, moreover, was of legal consequence. Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered. *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (Rule 59(e) motions need not be granted unless "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotation marks omitted); *New York v. United States*, 880 F. Supp. 37, 39 (D.D.C. 1995) ("Only if the moving party presents new facts or a clear error of law which 'compel' a change in the court's ruling will the motion to reconsider be granted.").

In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (ellipsis omitted) (quoting *Dow Chem., USA v. Consumer Prod. Safety Comm'n*, 464 F. Supp. 904, 906 (W.D. La. 1979)); *see Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (approving of *Greene*'s "as justice requires" standard); *Cobell v. Norton*,

224 F.R.D. 266, 272 (D.D.C. 2004) ("[T]he standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to [Rule 59(e)] motions for reconsideration[.] * * * [I]t is clear that courts have more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rule 59(e)[.]") (internal quotation marks omitted).

Accordingly, the district court's application of Rule 59(e)'s strict prohibition on raising new arguments post-judgment as a flat bar to considering plaintiffs' argument was unwarranted. *See Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (unpublished) (error to treat a motion for reconsideration under Rule 54(b) as a Rule 59(e) motion); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469–1473 (4th Cir. 1991) (error to treat motion for reconsideration of an order dismissing a complaint as to just one of two defendants as subject to the strict standards of Rule 60(b)); *Greene*, 764 F.2d at 22; *Raytheon Constructors Inc. v. Asarco Inc.*, 368 F.3d 1214, 1216–1217 (10th Cir. 2003) (improper to apply Rule 60(b) standards to motion for reconsideration filed after the first stage in a bifurcated trial).

We need not decide whether that misstep by itself would warrant reversal. That is because the district court was also mistaken in concluding that the plaintiffs had not previously argued that the Settlement Agreement permits an award of third-party costs. The plaintiffs raised the point, albeit without much elaboration at first, in both their initial petition for an expense award and in the reply brief in support of their petition. *See* J.A. 788, 1664.

That oversight may be understandable, given the voluminous claims and arguments made over the course of

approving and implementing this massive and complex Settlement Agreement. Unfortunately, the error leaves us without guidance as to how the district court would have interpreted the Settlement Agreement and, more importantly, how it would exercise its broad discretion in compensating expenses if they were found to be recoverable. We are reluctant to interpret in the first instance a provision of the Settlement Agreement on which the parties place such starkly different readings, especially without knowing if the ruling would have any practical consequence. The district court, after all, might simply decline to exercise its discretion to award costs even if they were deemed available. *Cf. Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012) ("Although we review all questions of law de novo and have the discretion to consider questions of law that were not passed upon by the District Court, this court's normal rule is to avoid such consideration.") (quoting *Liberty Property Trust v. Republic Properties Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009)); *Bowie v. Maddox*, 642 F.3d 1122, 1131 (D.C. Cir. 2011) (remanding where legal issue not passed on below raised "several questions of first impression in this circuit that would benefit from the trial court's consideration"). Mindful as we are of the length of time that has already elapsed in this proceeding, we decline to resolve this legal issue without providing the district court with an opportunity to consider the interpretive and discretionary issues in the first instance.

## IV

### Conclusion

We hold that the appeal filed by the plaintiffs here is timely and that the order appealed from is both final and ripe. We affirm the district court's denial of an additional award of expenses to Cobell. Finally, we vacate and remand the

district court's determination that the questions of whether third-party expenses can and should be reimbursed were procedurally barred. We remand for the district court to consider that argument and, if warranted, to exercise its discretion concerning such awards.

*So ordered.*