# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 4, 2017          January 30, 2018

No. 16-5310

MARY E. COLLINS, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, ET AL.,
APPELLANTS

v.

PENSION BENEFIT GUARANTY CORPORATION AND M & M
TRANSPORTATION COMPANY PENSION PLAN,
APPELLEES

———

Consolidated with 16-5318

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:88-cv-03406)
(No. 1:89-cv-02997)

———

*John R. Ates* argued the cause for the appellants. *Allison
C. Pienta* was with him on brief. *Stephen R. Bruce* and *Ann
Curry Thompson* entered an appearance.

*Nicole Hagan*, Deputy Assistant General Counsel, Pension
Benefit Guaranty Corporation, argued the cause for the
appellee. *Judith R. Starr*, General Counsel, *Israel Goldowtiz*,
Deputy General Counsel, *Paula Connelly*, Assistant General

Counsel, *Anna Lofton*, Attorney, *Charles G. Cole*, *Gwendolyn Prothro-Renigar* and *Molly B. Fox* were with her on brief. *Joseph J. Shelton*, Assistant General Counsel, Pension Benefit Guaranty Corporation, entered an appearance.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The issue in this appeal is whether defendant Pension Benefit Guaranty Corporation (PBGC) must pay attorneys' fees beyond an agreed ten-year period for wrapping up a class-action settlement. Counsel for named plaintiffs Mary Collins and Estella Page and the plaintiff class assert that the PBGC violated the wrap-up agreement by doing too little to identify and make payments to class members. The district court denied counsel's motion to compel payment of fees that they say should have been but were not paid as a result of the PBGC's alleged footdragging. Because we conclude the ten-year period for payment of attorneys' fees is unambiguous and has expired, we affirm.

## I. BACKGROUND

The underlying class action in this case sought payments for pension beneficiaries whose federally guaranteed pension plans had collapsed in the years immediately following creation of the PBGC. The PBGC reached a settlement with the class whereby a class action settlement board (CASB) was created and a private search firm retained to locate and make payments to class members. The plan succeeded beyond anyone's expectations, yielding over $1 billion in settlement payments—more than ten times the parties' estimate at the time of the settlement. Class counsel, as a participant in the CASB, helped administer the settlement and worked on its own and

with the private search firm to identify class members. In exchange, and as compensation for its work preceding the creation of the CASB, the settlement agreement entitled class counsel to eight per cent of every settlement payment, netting class counsel more than $85 million.

In 2001 the parties negotiated a "wrap-up agreement" to shut down the CASB and transfer its remaining responsibilities to the PBGC, which that year began an in-house pension search operation. *See* Joint Appendix (JA) 194–204 (wrap-up agreement). Under the wrap-up agreement, the PBGC was to continue paying attorneys' fees of eight per cent on every settlement payment "for a ten-year period" beginning with the transfer of payment liability to the PBGC pension search program "after August 31, 2002." JA 201.[1] The parties' infighting prevented the timely effectuation of the wrap-up agreement and the CASB continued in operation for several years after the PBGC had taken over the settlement payments. According to class counsel, the PBGC was preventing the full

---

[1] The fee provision reads in full:

> The modification of PBGC's liability to pay settlement benefits to permit settlement benefit payments through PBGC's Pension Search program after August 31, 2002, instead of through the Settlement Benefits Fund, shall not modify the U.S. District Court's June 7, 1996 Order awarding attorneys' fees as a percentage of class counsel's recovery on behalf of the class. Attorneys' fees shall continue to be deducted when settlement benefit payments are made to class members at the 8% rate provided in the U.S. District Court's June 7, 1996 Order for a ten-year period. Thereafter, PBGC shall have no further liability to class counsel in this case.

JA 201.

payment of settlement benefits during this time and therefore failed to pay class counsel their due. The PBGC says it was doing everything the wrap-up agreement required and at all events continued paying class counsel an eight per cent cut of all settlement payments. Ten years after the wrap-up agreement took effect, the PBGC stopped making payments to class counsel.

As the PBGC read it, the wrap-up agreement required that the fee payments cease. The agreement provides for payment of attorneys' fees "for a ten-year period" "after August 31, 2002," after which period "PBGC shall have no further liability to class counsel in this case." Class counsel went to court seeking continuation of the payments, arguing that the running of the ten-year period was subject to the PBGC's fully performing its end of the bargain, which in class counsel's view the PBGC did not do. On October 3, 2016 the district court denied class counsel's motion to compel continued payment of attorneys' fees beyond the ten-year wrap-up period. *See Page v. Pension Benefit Guar. Corp.*, 213 F. Supp. 3d 200 (D.D.C. 2016). Class counsel timely appealed.

## II. STANDARD OF REVIEW

The district court's order is final for jurisdictional purposes because it "conclusively resolves the last outstanding issue regarding the amount of and entitlement to [class counsel's] fees and expenses." *Cobell v. Jewell*, 802 F.3d 12, 22 (D.C. Cir. 2015).

The parties disagree over the standard of review. Class counsel insists that each of their claims should be reviewed de novo; the PBGC contends that the district court's conclusion that it had fully complied with the wrap-up agreement was a finding of fact subject to clear-error review. Although the district court's interpretation of the wrap-up agreement is

subject to de novo review, *see Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997) ("We customarily review decisions interpreting consent decrees . . . de novo, in the same manner as we review decisions interpreting contracts."), whether the PBGC's actions satisfied the requirements of a court-ordered consent decree is arguably a question of fact, which "will not be found clearly erroneous unless the court's account of the evidence is implausible in view of the entire record and it is apparent that its findings are clearly mistaken." *Robinson v. Am. Airlines, Inc.*, 908 F.2d 1020, 1022–23 (D.C. Cir. 1990). Class counsel has given us no reason to question the district court's fact-finding and, accordingly, we interpret de novo the wrap-up agreement on the factual record developed in district court.

## III. ANALYSIS

Class counsel argues that the wrap-up agreement's ten-year period for payment of attorneys' fees is ambiguous and therefore we must construe it based on evidence beyond the four corners of the agreement. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) ("If we find that the relevant clause is subject to more than one reasonable interpretation, we consider 'what a reasonable person in the position of the parties would have thought the disputed language meant'" (quoting *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir. 2014))). Failing that, class counsel argues that the PBGC prevented class counsel from fully performing under the wrap-up agreement and that, accordingly, class counsel should continue to be compensated beyond the ten-year cutoff. Neither argument is persuasive.

### A. THE TEN-YEAR PERIOD IS UNAMBIGUOUS.

It is a commonplace of contract law that we will give the parties' agreement the meaning they have given it themselves.

*See Armenian Assembly*, 758 F.3d at 280 ("[N]o sense of buyer's remorse can empower us to rewrite the plain terms of the contract to which [the parties] agreed."). In class counsel's telling, the parties intended that class counsel be paid not "for a ten-year period" *simpliciter* but rather for a ten-year period running by fits and starts with the PBGC's satisfactory performance of the wrap-up agreement. This argument fails for at least two reasons.

First, class counsel urges that the ambiguity of the ten-year term is apparent in light of the wrap-up agreement as a whole. But class counsel identifies and careful reading discloses nothing in the agreement as a whole that creates such an ambiguity. Rather than adverting to any evidence in the agreement, class counsel points to the parties' voluntary extension of two other time periods in the agreement as evidence that "ten years" does not in fact mean ten years. Although the wrap-up agreement called for payments to the contingent distribution reserve for five years, those payments continued for ten. And instead of making address-locator payments for three years, as required by the agreement, the parties voluntarily continued them for six. Class counsel cites the PBGC's voluntary continuation of these payments beyond the contractually required term as evidence that it is under a duty to continue making attorneys'-fees payments as well. Class counsel fails to recognize that voluntarily going beyond what the contract requires does not make the contract's requirements ambiguous. "The court may not create ambiguity where none exists," *Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1556 (D.C. Cir. 1991), and none exists here.

This first point alone is fatal to class counsel's argument. Yet even if we were to conclude that the fee provision is ambiguous—which it is not—there is a second reason class counsel must lose: there is nothing even outside the four

corners of the wrap-up agreement to suggest that the PBGC should pay attorneys' fees beyond the agreement's ten-year period. Class counsel have offered no evidence that the parties intended to condition the running of the ten-year period on specific actions of the PBGC other than performance of the wrap-up agreement. Our de novo interpretation of the wrap-up agreement gives us no reason to question the district court's conclusion that the PBGC fully performed notwithstanding class counsel's unsupported assertions to the contrary.

### B. PBGC DID NOT PREVENT CLASS COUNSEL'S PERFORMANCE OF THE WRAP-UP AGREEMENT.

Class counsel argues in the alternative that they are entitled to additional fee payments because the PBGC prevented class counsel's performance of the wrap-up agreement. The problem with this argument is that even if there were any bad behavior on the PBGC's part, there was no prevention. It is far from clear whether the wrap-up agreement required continued performance by class counsel after August 31, 2002, when their contractual obligation to help administer the settlement through the CASB ceased. *See generally* JA 194–204 (wrap-up agreement). But it does not matter if class counsel's continued work after August 31, 2002 was voluntary or mandatory, because even if class counsel were right on the law of prevention, they are wrong on the facts: class counsel *did* continue to locate class members after August 31, 2002, and the PBGC continued to pay them the eight per cent fee on those members' benefits.

Class counsel, however, are wrong on the law, too. The doctrine of prevention excuses performance by one party to a contract if its counterparty "hinders, prevents or makes impossible performance by the [first] party." WILLISTON ON CONTRACTS 4th § 39.3. "Under the doctrine, a contracting

party whose performance of its promise is prevented by the other party is not obligated to perform and is excused from any further offer of performance." *Id.* "Since each party to a contract impliedly agrees not to prevent the other party from performing and not to render performance impossible, a contracting party whose unjustified action prevents the other party from performing may not claim that the other party has not performed and that party is, in fact, breaching the contract." 17A AM. JUR. 2D CONTRACTS § 675. "The prevention doctrine is an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs. The doctrine excuses a condition precedent when a party wrongfully prevents the condition from occurring." *Dist.-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1023 (D.C. Cir. 1985). "Generally, one is not bound by a conditional contract until the condition occurs. The doctrine of prevention is an exception to this general rule. This doctrine provides that when a promisor wrongfully prevents a condition from occurring that condition is excused." *Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1254–55 (D.C. Cir. 1979).

These statements describing the prevention doctrine plainly refute class counsel's invocation of it. Two fundamental elements of prevention are missing here. First, the wrap-up agreement is not a conditional contract: no party's performance was conditioned on the performance of any other party or on the occurrence of any external condition. Responsibility for settlement payments transferred to the PBGC when the wrap-up agreement became effective on August 31, 2002. The PBGC fully satisfied its obligation to pay attorneys' fees for ten years after that date. That class counsel continued to locate settlement beneficiaries, whether its efforts were voluntary or mandatory, demonstrates that the PBGC did not "hinder," much less "make impossible," class counsel's work on behalf of the class. *See* WILLISTON, *supra*, § 39.3.

Second, if we assume away the difficulties in applying the prevention doctrine to a non-conditional contract, class counsel must yet contend with the problem that prevention is a shield, not a sword. *See Shear*, 606 F.2d at 1255 ("Prevention . . . can negate a requirement to satisfy a condition precedent."). The PBGC has not alleged any nonperformance by class counsel against which prevention could be invoked as a defense. Class counsel have nevertheless attempted—unsuccessfully—to fashion a cause of action out of the prevention doctrine. We will not subject the doctrine to such an ill fit.[2]

## IV. CONCLUSION

When they entered the wrap-up agreement, the parties intended that the wrap-up would be complete within ten years—indeed, they believed it would be complete much sooner. JA 204 (anticipating wrap-up would end by the end of 2002). Class counsel assumed the risk that ten more years of fees would not carry them through the end of the case; the PBGC in return agreed to continue paying fees long after class counsel had stopped working on the case. There is no reason to

---

[2] Because we affirm the district court, we need not resolve class counsel's request for reassignment of their fee request to a different district judge. We wish to make clear, however, that class counsel's discontent with the district judge is utterly without merit. Class counsel can unquestionably be said, as the district court so said, to have "pocketed" ("place[d] in or as if in one's pocket") a "windfall" ("a sudden and unexpected piece of good fortune or personal gain") by virtue of the unforeseen success of the class settlement, which can fairly be described as a "well" ("a source [of revenue] to be drawn upon") that figuratively "ran dry" when the ten-year period expired. *See* AM. HERITAGE DICT. 956, 1372, 1383 (2d Coll. ed. 1982). There are few occasions for the "extraordinary remedy" of reassignment, *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 151 (D.C. Cir. 2015), and this case is plainly not among them.

relieve class counsel of the bargain they knowingly struck in the wrap-up agreement.

For the foregoing reasons, the district court's denial of the motion to compel payment of attorneys' fees is affirmed.

*So ordered.*