# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 21, 2014        Decided August 8, 2014

No. 12-5200

AARON L. SCHNITZLER, ALSO KNOWN AS TYSON Q. BECHT,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01318)

*Megan L. Degeneffe*, Student Counsel, argued the cause for appellant. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, *Rita K. Lomio* and *Lola A. Kingo*, Supervising Attorneys, and *Harry P. Koulos*, Student Counsel.

*Aaron S. Goldsmith*, Senior Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, and *Colin A. Kisor*, Acting Director.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  For reasons we do not understand, Aaron Schnitzler, a South Dakota state prisoner, wants to renounce his United States citizenship.  For reasons the government has failed to explain -- or rather, for a host of ever-changing reasons -- it has made it impossible for him to do so.  To obtain relief, Schnitzler brought suit against the United States.  The district court dismissed the complaint for lack of jurisdiction, finding both that it was moot because Schnitzler had obtained all the relief he sought, and that he lacked standing because he had not been harmed.

Schnitzler's complaint is not moot because the relief he seeks -- an exception to the government's in-person interview requirement for renunciation, and official acknowledgment of his renunciation -- has not been granted.  Likewise, Schnitzler has standing because he remains a citizen against his wishes and allegedly in violation of his constitutional rights -- an allegation that we must accept for purposes of ruling on his standing.  We therefore reverse and remand for further proceedings.

## I

The Immigration and Nationality Act (INA) provides that a United States national can lose his nationality by voluntarily performing one of several listed acts with the intention of relinquishing Unites States nationality.  8 U.S.C. § 1481(a).  Schnitzler relies on two such acts:

> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

> (6) making in the United States a formal written renunciation of nationality in such form as may be

prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

*Id.* § 1481(a)(5), (6).

Schnitzler is an American citizen, currently serving a sentence in a state facility in South Dakota. From there, he began petitioning various United States agencies to recognize his desire to renounce his citizenship.

In a June 2010 request to U.S. Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security, Schnitzler sought "a letter stating that [he] is not a citizen of the United States." App. 100. In July 2010, USCIS responded that the State Department -- not USCIS -- has jurisdiction over "[t]he renunciation of United States citizenship." App. 98. USCIS said that § 1481(a)(5) "is the section of law that provides for the ability of a U.S. citizen to renounce his or her United States citizenship," and "Americans cannot effectively renounce their citizenship by mail, through an agent, or while in the United States." *Id*.

Schnitzler then turned to the Department of State for help. In an August 2010 letter, the State Department told him the same thing USCIS had: "that one can only renounce one's U.S. citizenship before a U.S. diplomatic or consular officer at a U.S. embassy or consulate abroad." App. 97.

Having made no progress in these efforts, Schnitzler wrote to the Department of Justice, citing § 1481(a)(6) as permitting him to renounce his citizenship while in the United States. App. 96. But the Justice Department referred him back to USCIS, as

did the State Department in another letter. *See* App. 79, 81, 82. So Schnitzler wrote twice more to USCIS, specifically citing § 1481(a)(6) each time, and complaining about his inability to reach someone who would adjudicate his claim. App. 79-81. Once again, USCIS sent him back to the State Department. In an August 2011 letter (sent soon after Schnitzler filed his complaint), USCIS reiterated that all renunciations were processed by the Department of State, and that § 1481(a)(5) was the only available avenue. Renunciation under § 1481(a)(6), it said, "can only be applied when there is a state of war in the United States," which it implied was not then the case. App. 75-76.[1] And while § 1481(a)(5) was an available (and the only) avenue, it came with a catch: the applicant must "[a]ppear in person before a U.S. consular or diplomatic officer . . . in a foreign country," *id.*, something that a South Dakota prisoner could not do.

Tiring of the merry-go-round, Schnitzler filed this *pro se* lawsuit on July 20, 2011, naming the Departments of Homeland Security, State, Justice, and others as defendants. The form he used to file the suit was provided by prison officials and was marked as a civil rights complaint under 42 U.S.C. § 1983. On the form, Schnitzler stated: "I want the United States of America to recognize that I am not a United States citizen." App. 10. He asked the court to: "Compel the Attorney General . . . to act on my request of Renunciation[;] and/or decla[re] [8 U.S.C. § 1481(a)(5) and (6)] unconstitutional based on . . .

---

[1]*But see Turner v. Beers*, No. 13-504, 2013 WL 6627983, at *3 (D.D.C. Dec. 17, 2013) (noting that "[t]he Government does not contest that we are 'in a state of war,' which is a prerequisite for [§ 1481(a)(6)] to be operative"); *Kaufman v. Holder*, 686 F. Supp. 2d 40, 43-44 (D.D.C. 2010) (holding that the United States was at war for purposes of § 1481(a)(6) in 2008, when another prisoner sought acknowledgment of his renunciation).

'equal protection' and/or the due process clause" because he had no way of satisfying those sections' requirements while incarcerated. *Id.*; *see id.* at 11-13.

On December 14, 2011, the government filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Appended to the government's motion was a letter from USCIS to Schnitzler, dated December 12, 2011, which stated:

> U.S. citizens seeking renunciation under . . . § 1481(a)(6), must appear at a USCIS field office for an in-person interview before a USCIS officer. . . . We understand that you are currently incarcerated and thus may not be able to appear for an in-person interview. Accordingly, your request will be held in abeyance until such time as you are able to appear in person . . . .

App. 36. In its motion, the government stated that the Attorney General's authority under § 1481(a)(6) had been transferred to the Secretary of Homeland Security, and asserted -- for the first time -- that the in-person interview was necessary "to determine whether an individual's renunciation request will be 'contrary to the interests [of] national defense.'" App. 25 (quoting § 1481(a)(6)). Appended to a subsequent government filing was the declaration of a USCIS official who confirmed that the "interview is necessary in order to determine that renunciation would not be 'contrary to the interests of national defense.'" App. 48 (quoting § 1481(a)(6)). Arguing that the agency had now "acted upon Plaintiff's renunciation request," that he had "received the exact relief which he sought," and that he was entitled to nothing more, USCIS contended that Schnitzler's complaint was moot. App. 20, 22; *see id*. at 24.

Schnitzler objected to the government's use of the December 2011 letter on two grounds. First, he said he had never received it. That turned out to be true. USCIS admitted that it had never mailed the letter, and thereafter it delivered a copy to him. App. 49. Second, Schnitzler objected that the letter did not provide the relief he had sought in filing the lawsuit. "I want to renounce citizenship while in prison right now!" he said. App. 53. "The claim is that the Defendants do not give any way for me to renounce citizenship in the United States, and while in prison." App. 57.

The district court dismissed Schnitzler's complaint for lack of jurisdiction. Construing his request to compel agency action as a request for a writ of mandamus, and taking into account USCIS's December 2011 letter, the court held: "To the extent that defendant Homeland Security had a ministerial duty to act on the plaintiff's application to renounce his citizenship, which is also the relief the plaintiff seeks from the complaint, it has done so." *Schnitzler v. United States*, 863 F. Supp. 2d 1, 3 (D.D.C. 2012). Accordingly, the court said, that claim was moot. The district court further found that Schnitzler lacked standing to seek declaratory relief regarding his constitutional claims because the fact that he is "still considered a United States citizen . . . [does] not give rise to Article III standing." *Id.* at 4. The court also noted that "USCIS has represented that [he] will not be prejudiced by its decision to hold his application in abeyance until he is able to comply with § 1481(a)(6)." *Id.*

Schnitzler now appeals. On November 26, 2013, this court appointed Georgetown University Law Center's Appellate Litigation Program as amicus curiae in support of the appellant. We review the dismissal of a complaint for lack of subject matter jurisdiction de novo. *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 578 (D.C. Cir. 2007). We address the mootness issue in Part II and the standing issue in Part III.

II

A case is moot when "a party has already obtained all the relief that it has sought." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (internal quotation marks omitted). Here, Schnitzler's complaint included a demand that the Attorney General "act on my request of Renunciation." App. 10. The district court found that USCIS's December 2011 letter, informing Schnitzler that it would hold his application in abeyance pending an in-person interview, provided him all "the relief plaintiff seeks from the complaint," thus rendering the complaint moot. *Schnitzler*, 863 F. Supp. 2d at 3.

But that is far too narrow a construction of what Schnitzler sought. Schnitzler's complaint demanded not just any response, but an "ef[f]ective or practical way" to renounce his citizenship, App. 12, as well as the government's recognition of that renunciation, *id.* at 10 ("Simply -- I want the United States of America to recognize that I am not a United States citizen."). His subsequent filings make that even clearer. In one filing, for example, Schnitzler wrote:

> There is still <u>no</u> avenue allowed me to renunciate because I'm an Inmate. . . . They also give no reasons why they cannot do an inperson interview with me by coming to the prison, or doing it over the phone, or via webcam.

App. 105.[2]  And in another, he wrote:  "The issue of this case was never the lack of response from the government . . . but specifical[l]y the lack of Action to recognize my renunciation of citizenship right now."  App. 54.[3]  It is plain, then, that Schnitzler has not yet received all the relief he sought in his lawsuit.

In what appears to have been an alternative holding, the district court also found -- and the government now argues -- that "[t]o the extent that . . . Homeland Security had a ministerial duty to act[,] . . . it has done so."  *Schnitzler*, 863 F. Supp. 2d at 3.  That is, the court held that if Schnitzler's complaint sought something more than a mere response -- such as an exception to the in-person interview requirement or official acknowledgment of his renunciation -- then he was not entitled to it under the court's mandamus jurisdiction because "mandamus relief is available 'only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined.'"  *Id.* (quoting *Lozada Colon v. U.S. Dep't of State*, 170 F.3d 191, 191 (D.C. Cir. 1999)).[4]

---

[2]*See also* App. 17 (stating that "[t]he main claim of this law suit is that The United States of America gives no real way to . . . relinquish United States citizenship"); App. 57 ("The main issue of this claim is not that the Defendants needed to 'act' by sending me another letter, but rather that the United States of America gives me no real way to exercise relinquishment of citizenship.").

[3]*See also* App. 111 ("Getting another letter . . . is not changing or resolving this case at all.  'Acting' is al[l]owing me to renounce citizenship while in prison and while in the United States."); App. 64 (stating that "I want the government to 'act' to pronounce me NOT a citizen").

[4]*But cf. Ganem v. Heckler*, 746 F.2d 844, 853-55 (D.C. Cir. 1984) (granting mandamus to compel the Secretary of HHS to "alter her

But while the government and the district court construed Schnitzler's complaint as a petition for mandamus, that word is nowhere in his complaint.[5] Indeed, when faced with the government's contention that he had only filed for a writ of mandamus, Schnitzler, a *pro se* litigant, responded:

> This was not my intent . . . to file under the Mandamus Act, 28 U.S.C. § 1361. I, not an attorney, had no Idea there was a diff[e]rence. When an inmate files any lawsuit the court and the staff only give us one type of form. Regardless of this I have a clear right to <u>NOT</u> be a United States Citizen and the United States gives me no available remedy because I am in prison . . . .

App. 63. Given the district court's obligation to construe a *pro se* plaintiff's filings liberally, and to consider his filings as a whole before dismissing a complaint, *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), Schnitzler's complaint was not properly construed as solely for mandamus. Rather, his arguments that the in-person interview requirement constituted an arbitrary barrier to renunciation,[6] and that USCIS

---

methods" of determining whether a social security claimant living in Iran was eligible for benefits, because the Secretary's policy of requiring direct contact with the Iranian government "virtually guarantee[s] that the determination will not be made in a reasonable time").

[5]To the contrary, the face of the complaint -- on a form provided by the prison -- states that it is "a Complaint by a Prisoner Under the Civil Rights Act, 42 U.S.C. § 1983." App. 6.

[6]*See, e.g.*, App. 66 ("Does the Head of Homeland Security have authority to make a rule that arbitrarily takes the rights or freedoms away from even one person, with no trial, no due process, and no Justification?").

had failed to provide a reasonable explanation for that barrier,[7] sound in administrative law.

As court-appointed amicus notes, Schnitzler's complaint appears to state claims under the Administrative Procedure Act's cause of action for agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), and for arbitrary and capricious agency action, 5 U.S.C. § 706(2)(A). With respect to § 706(1), the district court did not undertake the kind of analysis that this court suggested in a similar case in which a prisoner had sought to renounce his citizenship. *See Kaufman v. Mukasey*, 524 F.3d 1334, 1340-41 (D.C. Cir. 2008).[8]

Nor did the court consider whether the agency had acted arbitrarily and capriciously, in contravention of 5 U.S.C. § 706(2).[9] During the course of Schnitzler's letter writing and

---

[7]*See, e.g.*, App. 65 ("[T]hey do not give a reason why I have to have an interview. They give no real reason why I cannot renounce my citizenship while in prison.").

[8]The government states that, although this circuit "previously suggested in dicta that the Government might have an obligation to act on applications to renounce," Gov't Br. 13 n.9 (citing *Kaufman*, 524 F.3d at 1339), "this dicta is not persuasive," *id*. This constitutes an argument about the merits, upon which Schnitzler may or may not ultimately prevail. But as we note below, his "prospects of success" on such a claim are "not pertinent to the mootness inquiry." *Chafin v. Chafin*, 133 S. Ct. 1017, 1024 (2013).

[9]*Cf. Fox v. Clinton*, 684 F.3d 67, 80 (D.C. Cir. 2012) (holding that the State Department's denial of the appellant's request for a certificate of loss of nationality that would acknowledge his surrender of U.S. citizenship was "arbitrary and capricious," because it was not "logical," "rational," or "adequately explained"); *Turner v. Beers*, No. 13-504, 2013 WL 6627983 (D.D.C. Dec. 17, 2013) (rejecting as moot

litigation, the government has offered a blizzard of constantly changing explanations for why it could not process his request. At various times, the government has said that his request could only be processed: by a different agency than the one to which Schnitzler sent each letter; at an overseas embassy because the United States was not at war; and at an in-person USCIS interview in the United States because the agency had to determine whether renunciation would be contrary to the interests of national defense. In this court, the government contends neither that the United States is not at war, nor that an in-person domestic interview is required to assess the interests of national defense. Instead, it offers a new explanation for the in-person interview requirement: that it is necessary to ensure that the request was made voluntarily and with a full understanding of its consequences. Gov't Br. 15-17. In something of an understatement, the government acknowledged at oral argument that it is "trying to develop a process . . . against the context of litigation." Oral Arg. Recording at 20:26-20:30.

In any event, whether or not the government's policy and explanations are reasonable under the Administrative Procedure Act is a merits question, not a question of the court's jurisdiction. *See Trudeau v. FTC*, 456 F.3d 178, 183-85 (D.C. Cir. 2006). And Schnitzler's "prospects of success" on such a claim are "not pertinent to the mootness inquiry." *Chafin v. Chafin*, 133 S. Ct. 1017, 1024 (2013). Because he has not received all the relief he sought, and because we do not yet know to what relief he may be entitled, Schnitzler's claim is not moot.

a prisoner's mandamus claim relating to his request to renounce his citizenship, but going on to assess the claim under § 706(2)(A)).

III

The district court also construed Schnitzler's complaint as seeking a declaration that 8 U.S.C. § 1481(a)(5) and (6) violate his constitutional rights to due process and equal protection. Schnitzler challenged § 1481(a)(5)'s requirement that a citizen seeking renunciation must be "in a foreign state," and the government's construction of § 1481(a)(6) as requiring an in-person domestic interview at a USCIS office.  Together, he alleged, these requirements both prevent him from exercising a right of renunciation and discriminate against those who cannot travel to do so.

The district court did not reach the merits of Schnitzler's constitutional claims, finding instead that he lacked standing to bring them.  *Schnitzler*, 863 F. Supp. 2d at 4.  The court held that he lacked standing because being "still considered a United States citizen" does "not state[] any other facts from which an actual injury may be found or reasonably inferred."  *Id*. Moreover, the court said, "USCIS has represented that the plaintiff will not be prejudiced by its decision to hold his application in abeyance until he is able to comply with" the in-person interview requirement. *Id*. In concluding that Schnitzler lacked standing, the court referenced one of the three necessary elements of standing:  that the plaintiff must have suffered an "injury in fact." *Id*.; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

But Schnitzler *has* sufficiently alleged an injury in fact:  to wit, being required to continue his association with the United States against his wishes.  The government contends that this cannot constitute an injury, given the general recognition of the benefits of U.S. citizenship. Gov't Br. 21; Oral Arg. Recording at 24:10-24:25.  Indeed, it may well seem incongruous that, at a time when many people are trying hard to obtain American

citizenship, Schnitzler regards himself as "injured" by his inability to renounce it.  Nonetheless, the fact that we, or the government's attorneys, would not ourselves feel "prejudiced" by being required to remain in citizenship status does not mean that Schnitzler has not suffered an injury in fact.  Nor is there any dispute that Schnitzler genuinely believes he has.  When plaintiffs allege that they will suffer "aesthetic injury" from the government's interference with their ability to observe an animal species, we do not resolve the matter by asking whether we -- or the government, or most other people -- have the same aesthetic sense.  *See Defenders of Wildlife*, 504 U.S. at 562-63.  Nor can we do the equivalent here.

In support of the district court's holding, the government also argues that "the Supreme Court has never recognized that a citizen has a fundamental constitutional right to renounce citizenship."  Gov't Br. 12.  In opposition to that holding, amicus cites authority in support of Schnitzler's position.  *See, e.g.*, Reply Br. 23-24 ("'In *Afroyim* [*v. Rusk*, 387 U.S. 253 (1967)], the [Supreme] Court placed the right of voluntary expatriation solidly on a constitutional footing.'" (quoting *Richards v. Sec'y of State*, 752 F.2d 1413, 1422 (9th Cir. 1985))).  The resolution of this dispute is a merits question, not a question of standing.  And the "Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."  *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)).  "Indeed, in reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims."  *Id.* (internal quotation marks omitted); *see Holistic Candlers and Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012).

14

The government also maintains that Schnitzler's equal protection claim must fail because prisoners are not a suspect class for purposes of such a claim. But this, too, is an argument about the merits, not about standing. Schnitzler's equal protection claim is that the in-person interview requirement erects a barrier that discriminates against those who cannot travel to renounce their citizenship. Whether or not Schnitzler will ultimately prevail on this claim, he "need only show that he was part of a group that was denied equal treatment" in order to establish his standing. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1103 (D.C. Cir. 2005).

Finally, the government argues that Schnitzler cannot establish the remaining two elements of standing: that there be "a causal connection between the injury and the conduct complained of," and that it is likely that the injury can be "redressed by a favorable decision" of the court. *Defenders of Wildlife*, 504 U.S. at 560. The government insists this is so because, although the complaint Schnitzler filed sought a declaration as to the unconstitutionality of the statute only, his "real complaint is . . . with USCIS for making a determination that an in-person interview in a USCIS field office is required to adjudicate applications for renunciation." Gov't Br. 23. According to the government, the "cause" of Schnitzler's inability to renounce his citizenship is not the statute but USCIS's in-person interview policy, and a decision holding the statute unconstitutional would not "redress" his injury.

This argument is a bit rich. The reason that Schnitzler's judicial *complaint* did not challenge USCIS's interview policy was that the government did not inform him that there *was* such a policy until USCIS's December 2011 letter. The government did not provide that letter until well after Schnitzler filed suit -- and even then, only after the government noticed that it had never mailed it to him. The government cannot now seek to bar

standing on the basis of a policy that Schnitzler, a *pro se* litigant, could not have known existed.

In any event, the government's argument ignores Schnitzler's subsequent filings, which the court is bound to read together with his complaint. *See Richardson*, 193 F.3d at 548. In his brief opposing the government's motion to dismiss, Schnitzler alleged that "[t]he United States government, by act, *policy*, or law, will not al[l]ow me to relinquish my citizenship," and he asked the court to "decla[re] the laws, *and polic[ie]s*" of USCIS unconstitutional. App. 64, 67 (emphasis added). That constitutes a clear challenge not only to the statute, but to the agency's interview policy as well. And if it is the policy that is the cause of Schnitzler's inability to renounce his citizenship, then a judicial determination that the policy is unconstitutional can redress his injury. Accordingly, standing is not a barrier to Schnitzler's ability to pursue his constitutional claims.

## IV

For the foregoing reasons, we reverse the dismissal of Schnitzler's complaint and remand for further proceedings consistent with this opinion.

*So ordered.*