# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 4, 2022          Decided September 2, 2022

No. 21-1208

IN RE: ABD AL-RAHIM HUSSEIN MUHAMMED AL-NASHIRI,
PETITIONER

———

On Petition for Writ of Mandamus and Prohibition
to the United States Court of Military Commission Review

———

*Michel D. Paradis*, Counsel, Office of Military Commissions, argued the cause for petitioner. With him on the petition for writ of mandamus and the reply were *CAPT Brian Mizer, JAGC, USN,* and *Anthony Natale*, Lead Counsel.

*John S. Summers, Andrew M. Erdlen,* and *Alexander J. Egervary* were on the brief for *amici curiae* the Center for Victims of Torture, et al. in support of the petition for writ of mandamus.

*Jason D. Wright* and *Juan O. Perla* were on the brief for *amici curiae* Professor Philippa Webb, et al. in support of the petition for writ of mandamus.

*Joseph F. Palmer*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the opposition to the petition for writ of mandamus were *Matthew G. Olsen*,

2

Assistant Attorney General for National Security, and *Danielle S. Tarin*, Attorney.

Before: HENDERSON and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Al-Nashiri, a Guantanamo prisoner awaiting trial as a terrorist, petitions this Court for a writ of mandamus, forbidding the government from using statements obtained by torture in prosecution against him and the Military Commission from receiving such evidence. Because we have no jurisdiction to hear this petition for several reasons, we dismiss it.

## I.  Background

Petitioner is a Saudi Arabian who was captured during the United States response to the terrorist attacks of September 11, 2001.  He was held in the custody of the Central Intelligence Agency for a time before being transferred to Department of Defense custody at the United States Naval Station in Guantanamo Bay, Cuba.

In an effort to gain actionable intelligence from Al-Nashiri regarding any future attacks, the CIA employed "enhanced interrogation techniques" ("EITs"). Some of these techniques allegedly constituted torture under United States and international law.  Laws concerning the use of torture forbid the use of statements obtained as a result of such torture.  *See, e.g.*, 10 U.S.C. § 948r(a); *see also* International Covenant on Civil and Political Rights, Dec. 16, 1966, S. Exec. Rep. 102-23, 999 U.N.T.S. 175; *see also* Universal Declaration of

Human Rights, G.A. Res. 217 (III) A, U.N. Doc. A/RES/217(III) (Dec. 10, 1948). The relevant statute in this case dictates that "[n]o statement obtained by the use of torture or by cruel, inhuman, or degrading treatment . . . shall be admissible in a military commission under this chapter, except against a person accused of torture or such treatment as evidence that the statement was made." 10 U.S.C. § 948r(a). The Government does not dispute that the EITs used on Al-Nashiri constitute torture.

In 2008, the United States brought capital charges against Al-Nashiri for his involvement in various terrorist plots. Continuous litigation has been ongoing since 2011 before a military commission, a non-Article III body tasked with "try[ing] alien unprivileged enemy belligerents for violations of the law of war and other offenses . . ." 10 U.S.C. § 948b(a); *see also* 10 U.S.C. § 948d (providing jurisdiction of military commissions). In 2021, the Government submitted a brief to the Commission, submission AE 353V, related to a discovery matter that contained statements compelled by torture.

Before the Commission, the Government did not dispute that the statements by Al-Nashiri were products of torture. Rather, it argued that it could use the statements in AE 353V to help answer certain discovery questions because § 948r(a) only barred the introduction of such statements at *trial*, not in pretrial proceedings. The Government contended that because it offered the statements not for their truth, but to answer certain discovery questions, the statements were not prohibited. The Commission agreed with the Government and ruled the Government could use the two statements in pretrial proceedings.

Al-Nashiri then petitioned the United States Court of Military Commission Review ("USCMCR") for a writ of

mandamus (1) vacating the Commission's ruling that the Government could use the two statements obtained by torture; and (2) directing the Commission to reconsider any other *ex parte* order that relied on statements obtained by torture. While that petition was pending, the Government successfully moved the Commission to remove the torture statements from the Commission's consideration, over the objections of Al-Nashiri. The USCMCR therefore found the issue moot but vacated the Commission's order to include the statements. It also found the factual record too sparse to support a vacatur of the *ex parte* orders.

Al-Nashiri now petitions this Court for a writ of mandamus to: (1) enjoin the Government from offering any statements obtained by torture; (2) enjoin the Commission from considering the same; and (3) vacate all orders based on pleadings or arguments containing such statements.

In its briefing to this Court opposing the writ, the Government changes its position on the use of the statements obtained by torture. It now concedes that no such statements are admissible at any phase of a trial, including in the pre-trial discovery stages. The Government also assured this Court during oral argument that "[the Government] do[es] not dispute and will not oppose a review by the military commission judge to conduct a review, to identify whether any *ex parte* orders exist that contain such [§] 948r(a) errors. [The Government] agree[s] that that process should take place in the military commission." Oral Arg. Tr. 27:6–11 (emphasis added).

## II. Analysis

Al-Nashiri's petition falls outside the jurisdiction of the Court for at least four reasons, at least three of them jurisdictional. We explain each of these reasons in turn.

5

a. Jurisdictional Bars

The federal courts are courts of limited jurisdiction. These courts are empowered to hear only those matters allocated to them by the Constitution. Three jurisdictional doctrines bar Al-Nashiri's petition in this case: mootness, ripeness, and standing.

i. *Mootness*

In order for us to entertain Al-Nashiri's requests to enjoin the Government and Commission from offering and considering, respectively, any evidence obtained by torture, Al-Nashiri must present the Court with an "'actual, ongoing controvers[y].'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). The mootness doctrine requires that if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," then the request is moot. *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990). Such is the case with regard to the withdrawn statements.

After first holding the Government's submission AE 353V could include Al-Nashiri's statements obtained by torture in the limited context of a discovery obligation, the Commission judge reconsidered the use of these statements upon motion by the Government. He then reversed course and ultimately ordered the Government to file an amended version of its discovery addendum without "any reference to [the] statements." Pet. A236. He also held that the "Commission [would] not consider the statements by the Accused" while Al-Nashiri was being tortured. *Id.*

The USCMCR, in considering Al-Nashiri's petition for mandamus, thus found this issue moot. It is true that the Commission initially ruled the torture statements could support a discovery issue. However, it ultimately reconsidered and ordered the Government to withdraw the statements. The USCMCR held that Al-Nashiri had "'already obtained all the relief that [he] ha[d] sought.'" Pet. A241 (quoting *Schnitzler v. United States*, 761 F.3d 33, 37 (D.C. Cir. 2014)). Though holding the issue moot, the USCMCR went so far as to vacate the Commission's original order admitting the statements in order to "clarify" the evidence presented before the Commission. Pet. A242. The USCMCR emphasized the narrow focus of the Commission's discovery ruling on those two statements only, suggesting that if the Commission relied on other evidence obtained by torture, the issue would not be moot.

Now, the Government has assured this Court in briefing, oral argument, and in subsequent letters submitted to us under Federal Rule of Appellate Procedure 28(j) that it will not seek to introduce any evidence obtained by the torture of Al-Nashiri or any third party in any stage of the proceedings. *See* Resp. 3–4; Oral Argument Tr. 27:21–25; *see also* Response to 28(j) Letter, Joseph F. Palmer to CADC Clerk of Court, May 20, 2022; *see also* 28(j) Letter, Joseph F. Palmer to CADC Clerk of Court, July 6, 2022. The Government has also reviewed the *ex parte* record and withdrawn the only other two statements it uncovered as having been obtained through the use of torture. *See* Resp. 39, Decl. of Lt. Comm. Charles M. Roman (identifying submissions AE 120LL and AE 120DDDDDD as using the same statement by Al-Nashiri obtained under torture); *see also* 28(j) Letter, Michel Paradis to CADC Clerk of Court, April 29, 2022 (same); *see also* 28(j) Letter, Joseph F. Palmer to CADC Clerk of Court, July 14,

2022 (stating those submissions have been withdrawn and resubmitted without the torture statements); *see also* Resp. 21–22. All of this provides us with "strong" and "sufficient" assurances that the Government has changed its practice regarding the use of these statements in pretrial proceedings. *See Porup v. Cent. Intel. Agency*, 997 F.3d 1224, 1232, 1233 (D.C. Cir. 2021) (holding that the government's declaration provided "strong assurance . . ." and "sufficient assurance that the [government's] new policy ha[d] displaced the practices contested by [the appellant]"); *cf. Zukerman v. United States Postal Serv.*, 961 F.3d 431, 444 (D.C. Cir. 2020) (refusing to find an issue moot when the Government could not show that it had ceased its "disputed conduct").

Al-Nashiri argues that the Government's withdrawal of the statements constitutes a "textbook case of voluntary cessation." Pet. 57. Therefore, he contends that this "litigation maneuver" cannot moot this issue. *Id.* Al-Nashiri finally contends that even if he has "'obtained relief as to a *specific request*' that gave rise to the controversy," this "'will not moot a claim that an agency *policy or practice*' that is likely to have prospective effect is unlawful." Pet. 58 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (emphasis in original)).

The doctrine of voluntary cessation requires that while "generally voluntary cessation of challenged activity does not moot a case," an issue may still be considered moot if "(1) 'there is no reasonable expectation that the alleged violation will recur,' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'" *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Both elements are present in this case—(1) the Government has assured this Court it will not offer any statements obtained by the torture of anyone at any stage of the proceedings, thus relieving Al-Nashiri's contention that the Government's practice "likely to have prospective effect is unlawful;" and (2) the Government has withdrawn the statements identified to have been made under torture. There is simply no remaining case or controversy with respect to the identified statements obtained by Al-Nashiri's torture.

### ii. *Ripeness*

Similarly, Al-Nashiri asks this Court to enjoin the Government and Commission from offering and considering any future evidence obtained by torture. Mootness and ripeness are two sides of the Article III justiciability coin, and this claim has not ripened into a case or controversy.

The ripeness doctrine requires that the federal courts "reserve[] judicial power for resolution of concrete and fully crystalized disputes." *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015) (internal quotation marks and citations omitted). In considering the ripeness of an issue, courts evaluate both "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (internal quotation marks and citations omitted). We have held that "a case is ripe when it 'presents a concrete legal dispute [and] no further factual development is essential to clarify the issues . . . '" and the issue "has 'crystallized' sufficiently for purposes of judicial review." *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 540 (D.C. Cir. 1999) (quoting *Payne*, 837 F.2d at 492–93) (alterations in original)). In short, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not

occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).

The issue of whether the Government may offer future statements obtained by torture to support its case is not yet ripe. This concern is not fit for judicial decision because it has not yet crystallized into a concrete legal dispute felt by the parties. There are no identified statements made by Al-Nashiri under torture that the Government has not withdrawn. And furthermore, the Government has repeatedly assured us it will not bring such statements in the future. Given the strong assurances from the Government and both the Commission's and USCMCR's position not to consider the prior statements obtained by torture, the Government's offering of any *further* statements obtained by torture constitutes a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

Al-Nashiri argues this issue ripened "the moment [the Government] used evidence obtained by torture" in its discovery filing and accuses the Government of misunderstanding the law of justiciability. Pet. 59. It is Al-Nashiri, however, who misunderstands. As we explained above, the issue of the withdrawn torture statements, or in Al-Nashiri's words "the moment [the Government] used evidence obtained by torture," is not unripe, but rather moot. The issue of any *future* submissions by the Government of evidence obtained by torture is as yet unripe for our review.

Al-Nashiri's other request—to vacate all *ex parte* orders using statements obtained by torture—is similarly unripe for adjudication. Al-Nashiri has not identified any non-withdrawn submissions that rely upon torture statements, preventing this issue from becoming "crystallized" into a "concrete legal dispute." *Rio Grande Pipeline*, 178 F.3d at 540

(quoting *Payne*, 837 F.2d at 492–93). Al-Nashiri asserts that the Government has not disputed that it has relied on such evidence in *ex parte* litigation, which Al-Nashiri is necessarily unable to ascertain because he is not privy to those determinations. Al-Nashiri further avers that transcripts of these *ex parte* proceedings are not uniformly kept, making a future appeal to this Court of the *ex parte* record particularly problematic.

We recognize that the Commission must balance Al-Nashiri's right to defend himself with the Government's duty to keep certain information classified. To this end, any vacatur of as-yet-unidentified *ex parte* rulings by this Court would be premature and therefore unripe. That task belongs to the Government and Commission in the first instance. As we explained above, the Government has already undertaken a review of the voluminous *ex parte* record, withdrawing the two additional statements it identified as constituting products of torture. *See* Resp. 39, Decl. of Lt. Comm. Charles M. Roman; 28(j) Letter, Joseph F. Palmer to CADC Clerk of Court, July 14, 2022. Furthermore, we are satisfied by the Government's representation made during oral argument that it will not oppose an order by the Commission to identify any further statements obtained by torture in the record. Oral Arg. Tr. 27:6–11. If issues arise as to any such statements in any of the *ex parte* proceedings, those issues might ripen into a case or controversy that can then be resolved by the Commission, USCMCR, or this Court, as necessary.

### iii. *Standing*

The standing doctrine requires that for a claim to be justiciable, the claimant must have injury that is actual or imminent by the act of the defendant or respondent in such a fashion as can be remedied by the action at bar. *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560–61 (1992). At this point in time, Al-Nashiri has alleged no injury that has been caused him by the possible (albeit remote) use of the torture-obtained statements. Obviously, if he has not alleged injury, he has not alleged redressability. Under no theory of law does he have standing to bring this action at this time.

### b. Failure to Allege a Mandamus Claim

Al-Nashiri has failed to allege the necessary elements for the claim of mandamus. Mandamus requires that: (1) he has "no other adequate means to attain the relief he desires"; (2) his "right to issuance of the writ is clear and indisputable"; and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81, (2004) (internal citations and quotation marks omitted). Although this failure to allege a claim is normally a matter for treatment under Rule 12(b)(6), the Supreme Court itself has treated the failure to allege a claim within the jurisdiction of the court as jurisdictional. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009) ("[D]etermining whether respondent's complaint has the 'heft' to state a claim is a task well within an appellate court's core competency"); *see also id.* at 672–73.

As we have explained to Al-Nashiri before, "[m]andamus is inappropriate in the presence of an obvious means of review: direct appeal from final judgment." *In re Al-Nashiri*, 791 F.3d 71, 78 (D.C. Cir. 2015). The "MCA empowers this Court to review all 'matters of law' once a military commission issues a final judgment and both the convening authority and the [USCMCR] review it." *Id.* at 79 (citing 10 U.S.C. § 950g(a), (d)). Thus, Al-Nashiri again has adequate means to attain the relief he desires for this issue;

namely, a direct appeal to this Court from any final judgment of the Commission with which he disagrees.

Al-Nashiri insists that the lower proceedings have been marked with the taint of torture, making any of the Commission's discovery or other preliminary rulings "irreparably contaminated in ways that cannot be corrected post-trial." Pet. 53–54. This is not so. As previously discussed, the Government has only been able to identify a handful of statements obtained through the use of torture, now withdrawn, in the many thousands of pages of documents comprising the record in this case. Moreover, Al-Nashiri may now move the Commission to conduct a search of its *ex parte* rulings, to which he is not privy, to identify any additional torture statements, a motion the Government has assured us it will not oppose. Oral Arg. Tr. 27:6–11. If the Government abandons this promise and the Commission relies on any such statements, Al-Nashiri can directly appeal the Commission's final judgment to this Court.

## III.  Conclusion

For the reasons set forth above, we dismiss Al-Nashiri's petition for a writ of mandamus.