United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 23-1294**

**September Term, 2023**
FILED ON: JUNE 28, 2024

IN RE: ENCEP NURJAMAN,
                PETITIONER

On Petition for Writ of Mandamus

Before: HENDERSON, MILLETT, and CHILDS, *Circuit Judges*.

**J U D G M E N T**

This case was considered on the record and on the briefs and oral arguments of the parties. The panel has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d).

It is **ORDERED AND ADJUDGED** that the petition for writ of mandamus be **DENIED**.

**I**

**A**

The Military Commissions Act of 2006 "established an integrated scheme dictating how enemy belligerents are to be tried and obtain appellate review[.]" *In re Al-Nashiri*, 835 F.3d 110, 122 (D.C. Cir. 2016) (quotation marks omitted); *see* Pub. L. No. 109-366, 120 Stat. 2600; *see also* 10 U.S.C. § 948b(a) ("This chapter establishes procedures governing the use of military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses triable by military commission."). The Act both sanctioned the use of military commissions, *see* 10 U.S.C. § 948b(b), and largely exempted them from the requirements of the Uniform Code of Military Justice and from challenge under the Geneva Conventions, *see id.* § 948b(c)–(e).

The military-commission process begins when a person subject to the Uniform Code of Military Justice swears a charge and specification against an accused. *See* 10 U.S.C. § 948q(a); Regulation for Trial by Military Commission 3-1 (2011). The "charge states the offense * * * that the accused is alleged to have committed[,]" while the "specification is a plain, concise, and definite statement of the essential facts constituting the offense charged." Rules for Military Commissions, Rule 307(c)(2)–(3).

Once any charges and their corresponding specifications are sworn, the Office of the Chief Prosecutor forwards the charges, the specifications, and other "accompanying materials or other evidence[] supporting the charges" to the convening authority. Regulation for Trial by Military Commission 3-3(a) (2011); *see* 10 U.S.C. § 948h. This evidence is referred to as a "referral binder[.]" *In re Nurjaman*, 679 F. Supp. 3d 1227, 1232 (USCMCR 2023).

A convening authority generally can "dispose of charges by dismissing any or all of them, forwarding any or all of them to another authority for disposition, or referring any or all of them to a military commission." Rules for Military Commissions, Rule 401(b); *see id.* Rule 407(a). Before any charge may be referred for trial by a military commission, however, the convening authority's legal advisor must issue a written statement assessing, as relevant here, whether the charge properly alleges an offense punishable by the Military Commissions Act and whether the evidence supports the charge. *See id.* Rule 406(a)–(b); *see also id.* Rule 406 Discussion ("The standard of proof to be applied in [Rule] 406(b)(2) is probable cause."). The statement must also include a "[r]ecommendation of the action to be taken by the convening authority." *Id.* Rule 406(b)(5).

When a convening authority either finds or is advised by a legal advisor that there are reasonable grounds to believe that (i) an offense triable before a military commission has been committed, (ii) the accused committed it, and (iii) the specification alleges a cognizable offense, the convening authority "may refer the charge and specification to a military commission for trial." Rules for Military Commissions, Rule 601(d)(1); *see id.* Rule 601(a) ("Referral is the order of a convening authority that charges against an accused will be tried by a specified military commission."). In reaching this determination, both the convening authority and the legal advisor "may consider information from any source and shall not be limited to the information reviewed by any previous authority[.]" *Id.* Rule 601(d)(1). Importantly, neither the convening authority nor the legal advisor is "required before charges are referred to resolve legal issues, including objections to evidence, which may arise at trial." *Id.*; *see* 10 U.S.C. § 949a (setting forth rules of evidence for military commissions).

At least two-thirds of the members of the military commission must vote to convict the accused of an offense. *See* 10 U.S.C. § 949m(a); *see also id.* § 949m(b) (requiring higher voting thresholds for certain sentences); *id.* § 949i(b) (guilty pleas). If the convening authority approves the military commission's final decision, and that decision includes a guilty finding, it must refer the case to the United States Court of Military Commission Review. *See* 10 U.S.C. § 950c(a); *see also id.* § 950c(b) (enabling the accused to waive right of review in certain cases). After the Court of Military Review acts, this court "ha[s] exclusive jurisdiction to determine the validity of a final judgment rendered by [the] military commission[.]" 10 U.S.C. § 950g(a). This court may not review such a judgment, however, "until all other appeals under [the Military Commissions Act] have been waived or exhausted." *Id.* § 950g(b).

**B**

The Military Commissions Act of 2009 prohibits the use of evidence obtained by torture in

military commissions. *See* Pub. L. 111–84, § 948r, 123 Stat. 2574, 2580. The Act added the following statutory provision—Section 948r(a)—within a subchapter entitled "Pre-Trial Procedure":

> No statement obtained by the use of torture or by cruel, inhuman, or degrading treatment (as defined by section 1003 of the Detainee Treatment Act of 2005 (42 U.S.C. 2000dd)), whether or not under color of law, shall be admissible in a military commission under this chapter, except against a person accused of torture or such treatment as evidence that the statement was made.

123 Stat. at 2580 (codified at 10 U.S.C. § 948r(a)).

## C

Encep Nurjaman (aka "Hambali") is an Indonesian citizen who alleges that he was apprehended by Thai and United States security services in 2003 on suspicion of funding terrorist activities. He further alleges that he remained in Central Intelligence Agency custody for more than three years, before being transferred to the custody of the United States military at the Guantanamo Bay detention camp in Cuba.

On April 5, 2019, the Office of the Chief Prosecutor swore charges against Nurjaman and two others. The charges included allegations that Nurjaman had assisted the al Qaeda and Jemaah Islamiyah terrorist groups in planning, coordinating, and/or carrying out a series of bombings in Indonesia and Thailand between 2000 and 2003 that resulted in the deaths of more than two hundred people. Nurjaman was charged with eight offenses under the Military Commissions Act: (1) murder in violation of the law of war, 10 U.S.C. § 950t(15); (2) attempted murder in violation of the law of war, *id*. § 950t(28); (3) intentionally causing serious bodily injury, *id*. § 950t(13); (4) terrorism, *id*. § 950t(24); (5) attacking civilians, *id*. § 950t(2); (6) attacking civilian objects, *id*. § 950t(3); (7) destruction of property in violation of the law of war, *id*. § 950t(16); and (8) conspiracy, *id.* § 950t(29).

Later that year, the Office of the Chief Prosecutor forwarded the sworn charges and specifications, along with the referral binder, to the convening authority and recommended referral of the charges to trial by military commission. The referral binder contained more than 1,300 pages of documents supporting the charges and their specifications.

Among the documents in the referral binder was a nine-page excerpt of the 9/11 Commission Report. App. 53; *see* App. 4. Within the nine-page excerpt, the government had highlighted a three-page section entitled "Hambali[.]" App. 54. Those three pages "discussed [Nurjaman's] support to and relationships with al Qaeda leaders, operatives, and members, including Khalid Shaikh Mohammad[.]" App. 4. The nine-page excerpt cited to intelligence reports regarding information from captured al Qaeda members. *See* App. 54. The United States government has acknowledged that "enhanced interrogation techniques" were "used in interrogations conducted

during the time period of th[ose] cited intelligence reports[.]" App. 54 (citing S. REP. NO. 113-288 (2014)).

On January 13, 2021, the acting legal adviser to the convening authority recommended referral of the sworn charges to a military commission. Eight days later, the convening authority found probable cause that Nurjaman and his two co-accuseds had committed the charged offenses. The authority then referred the sworn charges to a non-capital military commission for trial.

Nurjaman moved to dismiss his case with prejudice or, in the alternative, to dismiss his case without prejudice and to permanently disqualify the Office of the Chief Prosecutor and the Office of the Convening Authority from further involvement in his case. Nurjaman argued that the government had committed prosecutorial misconduct by including in the binder evidence obtained using torture—specifically, the 9/11 Commission Report excerpt—in violation of Section 948r(a). The military commission denied Nurjaman's motion on October 6, 2022.

Nurjaman subsequently filed in the Court of Military Commission Review a petition for a writ of mandamus and prohibition seeking an order vacating the military commission's ruling on his motion to dismiss and directing the military judge to dismiss the referral of his case with prejudice. Nurjaman expanded upon his prior argument, asserting that the inclusion of the 9/11 Commission Report excerpt in his referral binder was unlawful because it included statements obtained by, or evidence *derived* from statements obtained by, torture. The Court of Military Commission Review denied Nurjaman's petition.

Nurjaman now petitions this court for a writ of mandamus. He asks this court to vacate the convening authority's referral without prejudice. *See* Nurjaman Pet. 3, 32. He also asks this court to: (1) "reverse the lower court decisions and hold explicitly that the Government may never use evidence derived from torture in pretrial proceedings, including at the referral stage"; and (2) "recognize that a violation of the torture-evidence prohibition is one of the very few constitutional violations that are not subject to harmless-error review on appeal." Nurjaman Reply Br. 3.

**II**

The All Writs Act permits this court to "issue all writs necessary or appropriate in aid of [our] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act, though, does not itself vest the appellate court with jurisdiction. *In re Al-Nashiri*, 791 F.3d 71, 75 (D.C. Cir. 2015). Rather, "there must be an independent statute that grants us jurisdiction before mandamus can be said to 'aid' it." *Id.* at 76 (quotation marks omitted). The Military Commissions Act gives this court "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission[.]" 10 U.S.C. § 950g(a). We have held that, under that statutory provision, "we can issue a writ of mandamus *now* to protect the exercise of our appellate jurisdiction *later*." *Al-Nashiri*, 791 F.3d at 76.

4

A petitioner must satisfy three conditions for a court to issue the "drastic and extraordinary" remedy of mandamus. *Cheney v. United States Dist. Ct. for the District of Columbia*, 542 U.S. 367, 380 (2004) (quotation marks omitted). First, the petitioner "must have no other adequate means to attain the relief he desires[.]" *Id.* (formatting modified). Second, the petitioner must "show[] that his right to the issuance of the writ is clear and indisputable." *Id.* at 381 (formatting modified). Third, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* While these "demanding" hurdles are "not insuperable[,]" *id.*, courts reserve "the invocation of this extraordinary remedy" for "only exceptional circumstances[,]" *id.* at 380 (quotation marks omitted).

### III

No exceptional circumstances warrant issuance of the writ in this case because circuit precedent clearly forecloses Nurjaman's petition. In *In re Al-Nashiri*, 47 F.4th 820 (D.C. Cir. 2022), this court held that a Guantanamo prisoner's challenge to the use in pre-trial proceedings of evidence obtained using torture could not be redressed through a petition for a writ of mandamus because direct appeal after final judgment provided an "adequate means to attain the relief he desire[d,]" *id.* at 827; *see New York–New York, LLC v. NLRB*, 676 F.3d 193, 194–195 (D.C. Cir. 2012) ("We are of course bound by our prior panel decision[.]"). We also rejected Al-Nashiri's argument that the proceedings before the military commission "ha[d] been marked with the taint of torture, making any of the Commission's discovery or other preliminary rulings irreparably contaminated in ways that cannot be corrected post-trial." *Al-Nashiri*, 47 F.4th at 827 (quotation marks omitted). We reasoned that the government had been able to identify only "a handful of statements obtained through the use of torture, [subsequently] withdrawn, in the many thousands of pages of documents comprising the record in th[e] case." *Id.* Furthermore, we noted that Al-Nashiri could move the military commission to conduct a review of its *ex parte* rulings to identify any additional statements. *Id.* And we emphasized that Al-Nashiri could raise any ensuing error in the military commission's reliance on statements obtained through torture on direct appeal from the commission's final judgment. *See id.* at 827–828.

Nurjaman's petition is not materially distinguishable from that in *Al-Nashiri*. Any error by the military commission in using evidence obtained through torture can be raised by Nurjaman on direct appeal from final judgment. *See* 10 U.S.C. § 950g(a), (d); *Al-Nashiri*, 47 F.4th at 827–828.[1]

Nurjaman argues that post-judgment review is inadequate to address his claimed error

---

[1] Nurjaman variously refers to evidence obtained through torture and evidence derived from torture. *Compare, e.g.*, Nurjaman Pet. 11, *with* Nurjaman Pet. 3. These formulations appear to refer to distinct categories of evidence—evidence obtained through torture is evidence (generally statements) directly elicited using torture, while torture-derived evidence is evidence that traces back to statements obtained through torture. The distinction between the two terms is not material in this case because Nurjaman has offered no argument that *Al-Nashiri*'s other-adequate-means holding is limited to evidence obtained through torture. *See Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) ("The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable.") (quotation marks

because, "[i]n a system where so many of the witnesses and so much of the evidence is directly or indirectly derived from torture, the taint created by the admissibility of torture-obtained evidence metastasizes in a manner that is invisible at trial and on direct appeal." Nurjaman Pet. 10–11. We rejected that same argument in *Al-Nashiri*, explaining that the military commission itself could remedy any erroneous use of evidence obtained through torture by reviewing filings and orders and removing any such evidence. *See Al-Nashiri*, 47 F.4th at 827. If the commission fell short in that task, we explained, Al-Nashiri could raise the error on direct appeal. *See id.* at 827–828. Nurjaman offers no sound reason why such relief was adequate to address the post-referral introduction of statements obtained through torture in *Al-Nashiri* but would fail to remedy the introduction of such statements during the referral stage in his case.

## IV

We have been clear that, "when addressing mandamus petitions in the context of the military commissions, we must 'faithfully enforce the traditional prerequisites for mandamus relief.'" *In re Al Baluchi*, 952 F.3d 363, 367–378 (D.C. Cir. 2020) (quoting *Al-Nashiri*, 791 F.3d at 78). Under controlling circuit precedent, Nurjaman has failed to meet those prerequisites here.[2]

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

---

omitted).

[2] The issue in this case should not recur because the government represented at oral argument that it "does not intend" to use torture-derived evidence in any referrals going forward. *See* Oral Arg. Tr. 20:22–25 (Court: "Does the Government intend to use torture derived evidence in its referrals going forward?" Counsel for the government: "No, Your Honor, the Government does not intend to do so.").